UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
UNITED STATES OF AMERICA,

         vs.                                            **AFFIRMATION**
                                                     7:07cr-00542-SCR

BERNARD J. BEEBE,

                        Defendant
-----------------------------------------------------------X
STATE OF NEW YORK    )
COUNTY OF ORANGE   )ss.:

        GARY GREENWALD, ESQ., being duly sworn, deposes and says:

        1.     I am the attorney of record for the Defendant, Bernard J. Beebe, and I make this affirmation in support of Mr. Beebe's pretrial motions submitted to this Court. The following facts are stated upon information and belief, based on my review of the relevant documents thus far provided by the Government, as well as my independent investigation and review of this case, including my interviews with Mr. Beebe.

        2.     Mr. Beebe was charged by Indictment with the following crimes;

            a.     Receiving Child Pornography Via the Internet, 18, U.S.C. §§2252A(a)(2)(B),; Count 1.

            b.     Transporting and Shipping Child Pornography; 18 U.S.C. §§2252A (a)(5)(B); Count 2. (Attached hereto as Exhibit A is a copy of the Indictment)

        3.     The Government has provided pre-trial discovery including the application for the search warrant granted by the Court on August 22, 2007.

4.     Additionally, the government has provided the defense with the opportunity to examine various items seized at the time of the execution of the warrant, including the copies of images referenced in Counts 1-2, as well as other documents.

## Suppression of Evidence Seized from Mr. Beebe's Home

5.     On August 22, 2007, the Government made an application for a search warrant authorizing the search of 11 Jewel Street, Maybrook, New York, the home of Bernard J. Beebe ("Mr. Beebe"). A copy of the search warrant application and affidavit of Agent Nicholas A. Raudenski (" Raudenski") is attached at **Exhibit B.**

6.     Specifically, the search warrant application sought permission to, among other things, to search the house for computers and other devices that might be used to store child pornography obtained from the Internet and to otherwise search the house for child pornography. The Government alleged that there was probable cause to believe that Mr. Beebe's home contained evidence of a violation of 18 U.S.C. §§ 2252(A) (possession, receipt and transmission of child pornography).

7.     In support of the application, Raudenski submitted an affidavit that was thirty three (33) pages in length. However, less than six (6) pages of the affidavit contained facts specifically pertaining to Mr. Beebe and his home. The remainder of the affidavit set forth generic facts regarding the crime of child pornography.

8.     For example, the generic portion of the affidavit contained a section entitled "Definitions", which sets forth the definition of child pornography. The affidavit also contained a "Use of Computers with Child Pornography" section that explains such terms as "IP Address" (the unique number used by a computer to access the internet) and "URL" or "Uniform Resource Locator" (the unique address for each file on the internet). The affidavit also described the Web as a collection of websites located or stored on different computers throughout the world.

9. The affidavit further stated that computers and the internet generally serve four functions in connection with child pornography. These are: production, communication, distribution and storage. (Para. 22 at exhibit B).

10. In that part of the affidavit specifically pertaining to Mr. Beebe, according to Agent Raudenski, he, in an undercover capacity, entered the "www.firelols.biz" website ("firelols.biz") and viewed the banner screen of the firelols.biz website, which displayed numerous sexually explicit images depicting child pornography. (Para. 9 of exhibit B). He continued on the site and after clicking a link for "Instant Access", was redirected to a payment web page at the URL "https://www.hpay.biz. Id. It is of extreme importance that the "www.firelols.biz " website ("firelols.biz"), is not a site that Mr. Beebe was alleged to be a member of, therefore, whatever information is depicted on that site is of no relevance to Mr. Beebe.

11. Raudenski continues by stating that "the payment web page indicated that instant access could be obtained for 30 or 60 days and directed that payments be made in one of a number of forms, including the service E-Gold Ltd." Id. After accessing the payment website, Raudenski stated that he saw that the payment page offered customers the opportunity to use E-Gold (and other means of payment) to access any one of a total of thirteen websites (including firelols.biz) (Para. 10 at exhibit B). Agent Raudenski set forth the thirteen sites that could be accessed as: XL (xlola), CG (candygirls), ML (mylola), OV (oldvideo), AD (arinadreams), SD (sundolls), GL (goldenlols), FL (firelols), LO (lolsonly), HL (hotlols), A2 (arinadreams II), LH (lolhouse), SA (secret area). Id.

12. At paragraph 11, Raudenski states that "the website also had a preview page, "http://www.lolsites.info/preview/", at which customers where given the opportunity to download free previews of all the thirteen sites listed at hpay.biz." Although it is not set forth clearly on the face of the affidavit, I will assume that the "website", with a preview page, that Agent Raudenski is referring to was "www.firelols.biz " website ("firelols.biz"). Once again, since the government does not even allege that

Mr. Beebe was a member of this website, what is contained on this website has no barring in relation to probable cause to search Mr. Beebe's home.

13. Raudenski then states that on February 15, 2006, law enforcement officers working with ICE, download files from the free previews for twelve of the thirteen websites listed on hpay.biz and subsequently on April 26, 2006, downloaded files from the free preview for the thirteenth website, "SD" (sundolls site) on April 26, 2006. (Para. 12 at Exhibit B) The agent then states that all the files downloaded from the free previews for the thirteen websites exclusively contained images of child pornography and that all the websites had advertised that the images contained in the free previews were indicative of the material that would be found in the websites, themselves. Id.

14. At paragraph 13 Agent Raudenski stated that he and another undercover agent sent separate e-mail messages to customer support offered at "xlola.biz" site. Then Raudenski states that the under cover agent received a response which stated that he was welcome to transfer money directly to "E-Gold account number 2932763. (Para. 14 at exhibit B). Raudenski then states that he himself received a response but was directed to transfer money directly to E-Gold account number 2928629. Id.

15. For some reason, purportedly in support of reasonable cause to believe Mr. Beebe had child pornography in his home, Agent Raudenski once again, now at paragraph 15, asserts again that the "www. firelols.biz" website contained exclusively child pornography. He states that "on March 6, 2006, another ICE agent working in an undercover capacity purchased a membership to the child pornography website identified as "www. firelols.biz" (para. 15 at exhibit B). The affidavit continues by stating that "over a period of days, an ICE agent downloaded all of the material from firelols.biz, confirming the site entirely contained child pornography. Once again, the fact that this website, first visited by Agent Raudenski himself, and then by another undercover agent, allegedly contains child pornography forms no reasonable cause to believe Mr. Beebe's home contained illegal pornography. The reason for this is simple. The agent throughout the entire affidavit never asserts that Mr. Beebe was a member of this site.

16. In fact in the next paragraphs of Raudenski's affidavit he states that he learned that Mr. Beebe was a member of three entirely different websites. The agent states that after receiving the account number, ICE issued a summons to E-Gold Ltd for the records related to E-Gold accounts 2932763 and 2928629 as well as any account identified to be related to these accounts. (Para. 16 at exhibit B) Agent Raudenski then states "that based upon information provided by E-Gold, I know that Beebe held E-Gold account #2808925 and, through that account, purchased access to three (3) web sites identified as "CandyGirls", "Xlola" and "LolHouse" within the "www.lolsites.biz," group of child pornography". (Para. 17 of exhibit B).

17. Based upon the information provided by Agent Raudenski in his affidavit it is clear that there was insufficient probable cause to search Beebe's home. First of all, the Agent asserts that he and another agent went to the website "www. firelols.biz" and viewed and downloaded exclusively child pornography. Second he asserts that he went to a preview page "http://www.lolsites.info/preview/" and viewed previews for thirteen websites, said previews he said contained exclusively child pornography. It is of great significance that neither Agent Raudenski nor any other agents involved in the investigation derived memberships or entered the websites "CandyGirls", "Xlola" and "LolHouse", which Mr. Beebe was allegedly a member. Instead they attempt to establish probable cause by asserting that these websites are within the "www.lolsites.biz," group of child pornography" In making such a statement the agents were misleading the Court because, in fact, they never viewed these websites and therefore, could not attest to their content. In failing to verify what these websites actually contained, the agent was in no position to state that they were part of a group of child pornography sites. The agent apparently relied upon the statement or "preview" page of an illegal website to establish his beliefs, without setting forth in the affidavit why this source is credible, knowledgeable or truthful. As such, the preview page of another website should not be used to establish the contents of another site.

18. Furthermore, Raudenski did not provide any other information regarding "CandyGirls", "Xlola" and "LolHouse web pages. Importantly, Agent Raudenski did not set forth any facts from which it could be determined that the overriding, if not sole purpose of the websites, was the trading of child pornography. In fact, based upon a review of the search warrant affidavit, there is not even an assertion that any agents visited the websites that Mr. Beebe was an alleged member, so as to confirm that the sites actually even contained child pornography. Rather the Agent attempts to mislead the Court by saying they are a group of child pornography websites, without any verification as to what the actual websites, they allege Beebe was a member, contained.

## Misleading Statement's In Raudenski's Affidavit

19. In the application, Raudenski represents that the websites "CandyGirls", "Xlola" and "LolHouse" were within the "www.lolsites.biz," group of child pornography.

20. Based upon the investigation conducted by the agents, as set forth in the affidavit, this statement was misleading.

21. Since not a single agent actually entered the websites that they state are part of a group of child pornography websites, this statement is clearly misleading to the Court. Without entering the sites, the agent did not have sufficient knowledge to know what was actually contained on the website. Therefore, without the actual knowledge that these websites contained child pornography, the agents statement to the Court was false and misleading.

22. Based upon the foregoing, Mr. Beebe contends the he is entitled to a Franks Hearing, pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), to determine whether statements contained in the warrant application were false or misleading, and if so, whether there existed probable cause for the issuance of the search warrant upon the redaction of the offending statements.

23. Additionally, as set forth more particularly below, the affidavit fails to establish probable cause for the warrant, in that it does not demonstrate that Mr. Beebe was a member and/or a subscriber of a website(s) whose "overriding, if not sole purpose" was the trading of child pornography.

## No Proof That Site Contained Child Pornography or Was Dedicated to Trading Child Pornography

24. The search warrant application failed to allege sufficient facts to allow the Court to conclude that the overriding, if not sole purpose of the websites, that Mr. Beebe was allegedly a member, was the trading of child pornography. At most, the affidavit established that child pornography could be viewed or downloaded on other websites of which there is no information to support that Mr. Beebe was a member. There is no evidence that child pornography could be downloaded or viewed on "CandyGirls", "Xlola" and "LolHouse", which are the websites that the government alleges Mr. Beebe had paid to access.

25. In particular, the affidavit does not indicate that these websites:

a. contained any child pornography at all. First, the Raudenski affidavit merely stated that the web page, "www.firelols.biz" displayed images of child pornography. Second, the affidavit merely stated that the preview page, "http://www.lolsites.info/preview/" contained images of child pornography and that this website advertised that the images contained in the free previews were indicative of the material that would be found in the websites themselves. It is impossible to conclude, based on such limited information, that the "overriding, if not the sole, purpose of the "CandyGirls", "Xlola" and "LolHouse" websites was the trading of child pornography. For example, the website could have contained no child pornography, adult pornography or both adult and child pornography. Since Raudenski's affidavit fails to set forth that those websites were visited, they could not know what was on them. Therefore, membership in the website cannot imply illegal use.

26. The government relies heavily on the preview page website to assert that reasonable cause to believe that those websites actually contained child pornography existed, while only visiting one actual cite, that being "www.firelols.biz." Proof of the same is the statement by Agent Raudenski that " all the websites had advertised that the images contained in the free previews were indicative of the material that would be found in the websites, themselves." (Para. 12 at exhibit B) As such, it is clear that no agents entered "CandyGirls", "Xlola" and "LolHouse" and therefore, can not state whether they contained legal or illegal images. The governments reliance on the statement of a purported illegal website regarding the contents of other websites, can not be used to establish probable cause to search a person's home.

b. had a revealing website name. There is nothing in the name "CandyGirls", "Xlola" and "LolHouse" to communicate that the purpose of the website was the trading of child pornography.

c. provides no information regarding technical features of the site. The Raudenski affidavit provides no information regarding the technical features of the "CandyGirls", "Xlola" and "LolHouse" websites such as whether they contain a Files section that permitted downloading, a Polling section, a Links section, and a Chat section.

d. permitted downloading of child pornography. The Raudenski affidavit failed to establish that the websites Mr. Beebe was allegedly a member of: (1) permitted downloading of child pornography, (2) that the predominant purpose of the website was to download child pornography and (3) that the predominant purpose of the website was to download child pornography for its members. Without evidence that downloading was possible and it had occurred, there can absolutely be no probable cause to believe that Mr. Beebe had downloaded child pornography from these websites and that such pornography was on his home computer.

27. Moreover, the affidavit contains no evidence that a Government agent even joined the "CandyGirls", "Xlola" and "LolHouse" websites in an undercover capacity, yet alone, downloaded child pornography or received child pornography by attachments to e-mails, neither was there evidence that

other members were downloading child pornography or exchanging e-mails with illicit attachments. At most, the affidavit permits the conclusion that child pornography could be viewed at a website of which there is no indication that Mr. Beebe is a member.

28. In conclusion, because there was no factual evidence in Raudenski's affidavit that the three (3) websites in issue herein were ever visited by any agents, or that any of the three (3) websites actually contained child pornography, or that any of the three (3) websites evinced an overriding purpose to facilitate the downloading of child pornography, the affidavit supporting the application for the search warrant herein was insufficient to establish probable cause.

## Suppression of Mr. Beebe's Statement

29. Upon execution of the search warrant at Mr. Beebe's home, Government agents questioned Mr. Beebe regarding his alleged commission of the crime of child pornography.

30. Agents Raudenski and Fitzsimmons summarized alleged admissions made by Mr. Beebe in a five (5) page report attached hereto as **Exhibit C**.

31. Mr. Beebe contends that the alleged admissions are inadmissible on two grounds: (a) the statements must be excluded as "the fruit of the poisonous tree" in that they were obtained as a direct consequences of the illegal search; (b) the statements must be suppressed, in whole or in part, as a consequence of the failure to give Mr. Beebe his Miranda warnings. As set forth in the affidavit of Mr. Beebe attached hereto as **Exhibit D**, such statements were taken during the course of custodial interrogation, and therefore the statements were not voluntarily made and were otherwise obtained in violation of Mr. Beebe's Fifth Amendments rights.

**WHEREFORE**, it is respectfully requested that the court either issue an Order, pursuant to F.R.C.P. Rule 12(b)(3)( C), suppressing physical evidence upon the ground that such was obtained in violation of the defendant's rights under the Fourth Amendment; and an Order, pursuant to F.R.C.P. Rule 12(b)(3)( C), suppressing statements attributed to the defendant upon the ground that such statements were obtained in violation of the defendant's rights under the Fifth and Sixth Amendments; or in the alternative grant hearings to determine the same, together with such other and further relief as the Court seems just and proper.

Dated: October 12, 2007
      Chester, New York

_____
GARY GREENWALD
Federal Bar Roll #GG4605