EXHIBIT C



OFFICIAL USE ONLY

DEPARTMENT OF HOMELAND SECURITY
ICE
REPORT OF INVESTIGATION
CONTINUATION

PAGE 2
CASE NUMBER
REPORT NUMBER:

At approximately 1200 hours on August 23, 2006, SAC/NY Agents Raudenski and Fitzsimmons (hereinafter as Agents) conducted an interview of Bernard BEEBE at the SAC/NY office. Agents identified themselves and advised BEEBE of his rights accordingly. BEEBE stated that he understood his rights and was willing to speak to Agents regardless.

In sum and substance, BEEBE stated that he was employed at a job on Long Island, NY. BEEBE stated that he usually left his residence in Maybrook, NY on Monday for Long Island and returned to his residence on Friday night. BEEBE stated that he was an Operation Manager for a bus company and worked approximately eighty (80) hours a week.

BEEBE stated that he went onto some adult pornography sites. BEEBE stated that he received some links through his e-mail, which he clicked on and went to.

BEEBE stated that he utilized the computer located in the boy's bedroom located downstairs in his residence. BEEBE stated that he used that computer for work related purposes such as mapping routes. BEEBE stated that he also used that computer for his pornography purposes, also because it was the computer that provided the most privacy. BEEBE stated that he would close the door to the boy's bedroom for privacy.

BEEBE stated that the purpose of his pornography activities were strictly for fantasy. BEEBE claimed that of all of the computers that Agents seized, that he viewed pornography on all of them, including the "smashed in" one found in the garage. BEEBE stated that the "kid's" computer located in the basement den was never utilized for surfing for pornography. BEEBE stated that computer was for their homework etc.

BEEBE stated that he utilized the computer to surf the Internet for the most three (3) hours and as little as one (1) hour per internet session.

BEEBE stated that when he stayed in Long Island, he stayed with a friend named "Larry JONAP" who lived at 3 Cussick Lane located in Kings Park, NY. BEEBE

OFFICIAL USE ONLY
THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY OF THE DEPARTMENT OF HOMELAND SECURITY, ICE. ANY FURTHER REQUEST FOR DISCLOSURE OF THIS DOCUMENT OR INFORMATION CONTAINED HEREIN SHOULD BE REFERRED TO ICE HEADQUARTERS TOGETHER WITH A COPY OF THE DOCUMENT.

OFFICIAL USE ONLY

| DEPARTMENT OF HOMELAND SECURITY ICE | PAGE 3 |
|---|---|
| REPORT OF INVESTIGATION CONTINUATION | CASE NUMBER: |
| | REPORT NUMBER: |

stated that JONAP was 65 years in age. BEEBE stated that he never used the computer at JONAP's place.

BEEBE stated that his e-mail address was "dbeebe1@hvc.rr.com". BEEBE claimed that he was computer illiterate. BEEBE stated that he never went onto chat rooms to talk to people about pornography or for any other purposes.

BEEBE stated that he was the only one to utilize the computer located the "boy's" bedroom and that he gave explicit instructions to the entire family not to use that computer. BEEBE stated that he did this because that was the computer that he downloaded pornography to and in order to prevent someone from coming across the pornographic images. BEEBE stated that he was not into one specific kind of pornography, but rather "whatever fantasy" he had at the time.

BEEBE stated that he had an E-Gold account but had not used it for many purchases. BEEBE stated that mostly all of his purchases to pornography sites were purchased using his Chase credit card. BEEBE provided his Chase MasterCard credit card number as 5490 9137 5003 7996 and his Citi MasterCard as 5424 1807 1912 5806. BEEBE stated that he did not remember the password to the E-Gold account. BEEBE stated that possibly created the E-Gold account approximately two and one-half (2 1/2) years ago, but maybe more than that..

BEEBE stated that he purchased an amount of E-Gold using a site he did not remember, then an unidentified female with a "Swedish" accent called him to verify his purchase of E-Gold and the amount that he purchased. BEEBE stated that he made three (3) deposits of approximately 200, 250 and 300 dollars each into his E-Gold account. However, the unidentified female only called to verify one (1) time.

BEEBE stated that he was not into any specific kind of pornography. BEEBE stated that he would have fantasy time with himself while looking at the pornography on the Internet. BEEBE stated that he never thought about leaving the bedroom for the fantasy to do anything in real life. BEEBE stated that he did not look at homosexual pornography and never looked at anything containing babies. BEEBE stated that he always looked at women and that the age range was from teenage girls to older women.

BEEBE stated that he knew what child pornography was and that his definition was when some adult was having sex with a child. BEEBE stated that he knew that child pornography was illegal. BEEBE stated that he could distinguish a ten (10) year old from an adult.

BEEBE stated that he had seen child pornography on the Internet. Furthermore, BEEBE stated that with 100% certainty that he has seen child pornography on

OFFICIAL USE ONLY

THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY OF THE DEPARTMENT OF HOMELAND SECURITY, ICE. ANY FURTHER REQUEST FOR DISCLOSURE OF THIS DOCUMENT OR INFORMATION CONTAINED HEREIN SHOULD BE REFERRED TO ICE HEADQUARTERS TOGETHER WITH A COPY OF THE DOCUMENT.

OFFICIAL USE ONLY

| DEPARTMENT OF HOMELAND SECURITY ICE | PAGE 4 |
|---|---|
| REPORT OF INVESTIGATION CONTINUATION | CASE NUMBER |
| | REPORT NUMBER: |

the Internet. BEEBE stated that he did not focus at looking at children on the Internet. BEEBE stated that he had seen pictures of such as well as movies through a movie/video player on the computer. BEEBE admitted to having downloaded from mostly every website that he had been to and had downloaded from the child pornography sites that he had been to as well.

BEEBE stated that he categorized the pornography under a "personnel" folder on his computer and put everything in those folders. BEEBE stated that mostly all of the images that he downloaded were put into that one folder. BEEBE stated that there was a lot of stuff that he had downloaded including stuff that he downloaded that he might not have seen. BEEBE stated "he did not go searching for this stuff".

BEEBE stated that the last time that he purchased to one of these child pornography sites was approximately one (1) year ago or ten (10) months ago but that it could have been more or less. BEEBE stated that the last time that he used the computer was approximately seven (7) or eight (8) weeks ago before the family vacation that he was recently on. BEEBE stated that he hadn't purchased anything recently.

BEEBE was familiar with the term "Lolita" and thought that it referred to a promiscuous teenager. BEEBE stated that he purchased memberships to multiple pornography sites but did not remember the names or anything specific. BEEBE recalled frequently looking at a site called "Bang Bus" (aka Bang Bros aka Bang Brothers, an adult pornography site). Agents questioned BEEBE if he was familiar with sites known as "million faces", "sick child room", "pedo or pedio land", or "the real McCoy", to which he stated that he was not.

BEEBE stated that his credit cards were never stolen but they had a few charges that were disputed.

Agents questioned BEEBE regarding if the name of his E-gold account was called "Winged Jewell" to which BEEBE stated that it was the name of his account.

BEEBE then stated that he did not know that looking at naked minors posing was child pornography and that is was illegal.

BEEBE then stated that he did not target child pornography sites and that he did not search for child pornography. BEEBE stated that he was sent a lot of spam to his e-mail account which he then clicked on and went to the sites.

BEEBE reiterated that he would lock the door to the (boy's) bedroom to sexually gratify himself. BEEBE stated that he would never harm anyone or anything. Then BEEBE stated that it was hard to distinguish values from reality and fantasy. BEEBE stated that he did not trade images with anyone.

OFFICIAL USE ONLY

THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY OF THE DEPARTMENT OF HOMELAND SECURITY, ICE. ANY FURTHER REQUEST FOR DISCLOSURE OF THIS DOCUMENT OR INFORMATION CONTAINED HEREIN SHOULD BE REFERRED TO ICE HEADQUARTERS TOGETHER WITH A COPY OF THE DOCUMENT.

OFFICIAL USE ONLY

| DEPARTMENT OF HOMELAND SECURITY ICE | PAGE 5 |
| --- | --- |
| REPORT OF INVESTIGATION CONTINUATION | CASE NUMBER: |
|  | REPORT NUMBER: |

BEEBE claimed that was a hard working man living a real life and that his internet activities were only fantasy. BEEBE kept reiterating that he did not touch any children.

BEEBE stated that he never purchased a child pornography site for a specific reason. BEEBE stated that he never purchased a site that he thought was a child. BEEBE claimed that he received advertisements to a site of a girl that looked young.

Agents showed BEEBE printouts of three (3) child pornography sites that he purchased with his E-Gold account: "CandyGirls", "Xlola" and "LolHouse". BEEBE stated that he didn't remember joining those sites and didn't remember seeing "Xlola" or "LolHouse" but did recall seeing what looked like the "CandyGirls" site.

BEEBE claimed that this sort of stuff was all over the place. BEEBE stated that he never purchased a site based on the fact that it contained pictures of children.

Agents requested consent from BEEBE to search his e-mail account for further evidence of Internet purchases. BEEBE granted consent to the Agents and stated that he did not have a password to the Time Warner Cable/Road Runner account but that he auto-synched the account to open when he started his computer.

BEEBE expressed his interest in further cooperation in any way.

The interview was concluded at approximately 1330 hours.



BEEBE, Bernard

OFFICIAL USE ONLY
THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY OF THE DEPARTMENT OF HOMELAND SECURITY, ICE. ANY FURTHER REQUEST FOR DISCLOSURE OF THIS DOCUMENT OR INFORMATION CONTAINED HEREIN SHOULD BE REFERRED TO ICE HEADQUARTERS TOGETHER WITH A COPY OF THE DOCUMENT.

EXHIBIT D

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
UNITED STATES OF AMERICA,

        vs.                               **AFFIDAVIT OF**
                                         **BERNARD J. BEEBE**

BERNARD J. BEEBE,

                    Defendant
------------------------------------------------------X

STATE OF NEW YORK   )
                            ) ss.:
COUNTY OF ORANGE   )

      Bernard J. Beebe, being duly sworn, deposes and says:

1.     I am the Defendant in the above-captioned matter.

2.     I, hereby submit this Affidavit in support of my motion to suppress physical evidence upon the ground that such was obtained in violation of my rights under the Fourth Amendment; and suppressing statements attributed to me upon the ground that such statements were obtained in violation of my rights under the Fifth and Sixth Amendments.

3.     Early on the morning of August 23, 2006, while I was at work, I received a frantic telephone call from my wife who was at home with our children. She informed me that Federal Agents were searching our house, taking out computers and ancillary materials.

4.     I spoke to an agent who was at my house and I was told that they wanted to speak to me at Homeland Security Offices. They gave me the address and they told me I should leave work and report promptly to that address.

5.     I left work immediately and traveled to the Homeland Security address. While in transit, I called my wife and instructed her to call the only attorney we knew, who was our real estate attorney.

6.     After numerous attempts, she spoke with our attorney and asked what questions should I ask of the Homeland Security agents. Two questions were noted as paramount: First, "Am I the subject of the investigation" and second, "Do I need a lawyer".

7. I arrived at Homeland Security offices, fifteen to thirty minutes before the agents did and waited for them to return from my home.

8. Upon arrival, I was brought from one office to another office and sat down with two agents. Agents Raudenski and Fitzsimmons began questioning me at approximately 12:00 p.m.

9. Before the interrogation transpired, I asked the agents the two questions, if I was the subject of the investigation and do I need a lawyer.

10. Their response to the first questions was "it is hard to tell since our investigation is based on the Internet. Respect to the second question, do I need a lawyer, their response was "no".

11. At no point was I given my Miranda warnings and at no point were my rights explained to me.

12. I thought I was being arrested during the investigation. It never crossed my mind that I could say no because if I didn't cooperate, I felt I was going to be arrested.

13. The agents kept me at the office for approximately one hour and a half. They never told me I did not have to talk to them or that anything I told them could be used against me. At all times I felt as if I was not free to leave as the Agents continually asked me questions.

**WHEREFORE**, it is respectfully requested that the Court suppress the evidence and statements, or in the alternative, grant a hearing on the issues raised, and for such other and further relief as the court deems just, proper and equitable.

_____
Bernard J. Beebe

Sworn to before me this
12th day of October, 2007.

_____
NOTARY PUBLIC

ALICE A. KEHOE
Notary Public, State of New York
No. 01KE4978211
Qualified in Orange County
Term Expires February 25, 19~
2011