UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

                *Plaintiffs*,　　　　　7:07-cr-00542-scr

    -*against*-

BERNARD J. BEEBE

                *Defendants*.

---

## MEMORANDUM OF LAW FOR DEFENDANT BERNARD J. BEEBE

---

GREENWALD LAW OFFICES
Gary Greenwald, Esq.
*Attorneys for Defendant*
99 Brookside Avenue
Chester, New York 10918
(845) 469-4900

**STATEMENT OF FACTS**

Defendant, Bernard J. Beebe (hereinafter "Defendant"), has been indicted under 18 U.S.C. § 2252A(a)(2)(B), for allegedly receiving child pornography via the internet, and under 18 U.S.C. § 2252A(a)(5)(B), for allegedly transporting and shipping child pornography.

The indictments were obtained, in part, pursuant to evidence allegedly seized during, and statements allegedly made incidental to, a search warrant obtained by the United States of America (hereinafter the "Government") on August 22, 2007, which allowed the Government to search Defendant's home at 11 Jewel Street, Maybrook, New York.

The search warrant was granted by Hon. Mark D. Fox, U.S. Magistrate in and for the United States District Court in the Southern District of New York, upon submission to him of an affidavit dated August 22, 2007 from Nicholas A. Raudenski, a Senior Special Agent of the Department of Homeland Security, U.S. Immigration and Customs Enforcement ("ICE"). The sufficiency of that affidavit is the subject of this Memorandum of Law.

The substantive allegations in Mr. Raudenski's affidavit are limited to 6 pages and 13 paragraphs - numbered 8 through 20.

In his affidavit, Mr. Raudenski alleged that, on February 14, 2006, he entered a website called "www.firelols.biz" (hereinafter "firelols website"). Mr. Raudenski further alleged that the banner screen for the firelols website displayed sexually explicit images depicting child pornography as defined by 18 U.S.C. Section 2256. (Affidavit, ¶9).

Mr. Raudenski further alleged that he was then referred to another website called www.hpay.biz (hereinafter "hpay website"), which apparently indicated that it could facilitate access to the firelols website by an individual wishing to do so. (Affidavit, ¶9).

1

Mr. Raudenski alleged that the hpay website advertised that it could provide access to 12 other websites, in addition to firelols (13 websites in all), including three websites called Candygirls, Xlola, and Lolhouse respectively. (Affidavit, ¶10).

According to Mr. Raudenski, the hpay website provided previews of images, which the hpay website claimed could be downloaded from the 13 websites. (Affidavit, ¶¶'s 11-12). Mr. Raudenski deemed these images to be violative of 18 U.S.C. Section 2256. (Affidavit, ¶12).

Based upon further investigation by Mr. Raudenski and other agents of ICE, the Affidavit further alleges that payment records revealed that Defendant had purchased access to three of the 13 websites, which the hpay website had advertised were the source of the previews contained on that website, to wit: Candygirls on February 11, 2006, Xlola on February 11, 2006, and Lolhouse on February 25, 2006. (Affidavit, ¶17).

Although Mr. Raudenski alleges that, "all the websites had advertised that the images contained in the free previews were indicative of the material that would be found in the websites themselves" (Affidavit, ¶12), this statement clearly is untrue. When Mr. Raudenski alleged that "**all the websites** had advertised that the images contained" illegal images, it is apparent that he really meant that the "**hpay website** had advertised that the images contained" on the other websites contained these images.

It is apparent from Mr. Raudenski's affidavit that his statement was made based upon previews allegedly contained in the hpay website (and attributed to these other three sites by the hpay website) and not based upon anything observed or discovered directly in the Candygirls, Xlola, or Lolhouse websites themselves.

Although Mr. Raudenski alleges that an ICE agent obtained an hpay website membership

2

and was allowed to enter the firelols website (Affidavit, ¶15), Mr. Raudenski fails to indicate that he or any other ICE agent ever confirmed the hpay website's advertised claim that it could facilitate entry into any other website allegedly previewed, including Candygirls, Xlola, or Lolhouse, or that these other websites contained any offensive or illegal images.

Notably, nowhere in Mr. Raudenski's affidavit is it alleged that he or any other agent for "ICE" ever entered the Candygirls website, nor is there any allegation in his affidavit that Mr. Raudenski, or any other agent for "ICE," ever viewed the material actually available on the Candygirls website.

Moreover, nowhere in Mr. Raudenski's affidavit is it alleged that he, or any other agent for "ICE," ever entered the Xlola or Lolhouse websites, nor is there any allegation in his affidavit that Mr. Raudenski, or any other agent for "ICE," ever viewed the material actually available on these other two websites.

For the foregoing reasons, nowhere in Mr. Raudenski's affidavit is it alleged that he or any other agent actually viewed child pornography on any of the three websites - Candygirls, Xlola, or Lolhouse - or that he or any other agent were able to ascertain whether or not child pornography could be downloaded from any of these three websites.

Mr. Raudenski's statement concerning the material which the "websites had advertised" appears to have been carefully worded to give the impression that the Candygirls, Xlola, and Lolhouse websites had, themselves, advertised impermissible child pornography, when, in fact, those websites were never accessed to determine whether or not child pornography was available at those websites. Rather, Mr. Raudenski appears to have relied upon advertising on the hpay website, which clearly was geared to generate income, and to have concluded from the content on

3

the hpay website that child pornography was available at the Candygirls, Xlola, and Lolhouse websites.

Mr. Raudenski fails to provide any justification for his failure to access the Candygirls, Xlola, and Lolhouse sites, to determine their content, when ICE agents clearly were able to access the firelols website.

For the reasons set forth below, Mr. Raudenski's affidavit failed to demonstrate a sufficient basis for issuing a warrant to search Defendant's home and the search was illegal.

## ARGUMENT

### THE SEARCH OF DEFENDANT'S HOME VIOLATED HIS CONSTITUTIONAL RIGHTS AND THE EVIDENCE SEIZED AND STATEMENTS MADE INCIDENTAL TO THAT SEARCH MUST BE SUPPRESSED

The Fourth Amendment to the United States Constitution prohibits "unreasonable searches and seizures" and mandates that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S.Const., Amendment IV.

Probable cause does not exist unless the known facts and circumstances demonstrate a "reasonable belief" that "contraband or evidence of a crime will be found" in the place to be searched. *Ornelas v. United States*, 517 U.S. 690, 696 (1996).

Property may not be searched "unless its occupant is reasonably suspected of a crime" and a search warrant may only be issued if it is "satisfactorily demonstrated to the magistrate that fruits, instrumentalities, or evidence of crime is located on the premises." *Zurcher v. Stanford Daily*, 436 U.S. 457, 559 (1978).

4

A) The Search Warrant Application Lacked Probable Cause On Its Face

A judge reviewing a search warrant application must make a "practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 46 U.S.213, 238 (1983).

A judge to whom a search warrant is made must find probable cause to believe that a crime has been committed and that evidence of the crime will be found in the place to be searched. *See United States v. Travisano*, 724 F.2d 341 (2d Cir. 1983); *United States v. Penna*, 961 F.2d 333 (2d Cir. 1992).

However, the affidavit must state particularized facts so that the judge can determine probable cause and should not place the judge in a position of having to rely upon the bare conclusions of others. *Gates, supra.*

In the context of purported child pornography websites, this Circuit has held that, in order to justify probable cause, at minimum, the Government must at least have evidence (1) that a person is a member of the pornographic site, and (2) that the "overriding, if not sole purpose" of the website was the trading of child pornography. *United States v. Martin*, 418 F.3d 148 (2d Cir. 2005).

In order to demonstrate an overriding purpose, the *Martin* Court indicated that the affidavit submitted in support of a search warrant must show evidence akin to that found therein. In *Martin*, the affidavit submitted in support of the search warrant indicated that the website in issue contained a greeting to visitors upon entering the website, which expressly acknowledged

5

the intent of the website to share, download, and collect child pornography.

The affidavit in that case also indicated that the website contained pictures and movies of child pornography.

Unlike the case in *Martin*, the magistrate herein was not presented with an affidavit for a search warrant which demonstrated that the "overriding, if not sole purpose" of the three websites in issue herein was child pornography. In fact, no evidence was presented to the magistrate regarding any of the content actually found on any of the three websites in issue herein and the inescapable reason for this is that those websites were never accessed by the affiant, Mr. Raudenski, or by any other agent of ICE.

Although the content of material on the **hpay website** <u>was</u> alleged in Mr. Raudensky's affidavit, the content of material on the **Candygirls, Xlola, or Lolhouse websites** <u>was not</u> alleged in Mr. Raudenski's affidavit or presented to the magistrate herein.

Thus, when it came to determining the purpose of these three websites, the magistrate herein was provided merely with bare conclusions and speculation formulated by Mr. Raudenski and was not provided with any of the specific evidence of the actual content of those sites, as required by the case law. *See Gates, supra; Martin, supra.*

In his affidavit, Mr. Raudenski himself reveals the significance of having failed to actually access the Candygirls, Xlola, and Lolhouse websites before making his speculative conclusion that these sites contained child pornorgraphy. In ¶7(f) of his affidavit, Mr. Raudenski admits that "[t]he Web is a collection of websites located or stored on different computers throughout the world." It reasonably could be presumed from Mr. Raudenski's admission, therefore, that the hpay website, on the one hand, and the Candygirls, Xlola, and Lolhouse

6

websites respectively, on the other hand, were among the collection of websites available on the web and contained content located or stored on different computers throughout the world - i.e. the content of one could not be assumed to contain the content of another because they were stored on different computers.

Moreover, although the within search warrant was not supported by probable cause under *Martin, supra* for the reasons stated above, case law subsequent to *Martin* mandates even stricter scrutiny in the case at bar. This case law indicates that more than mere membership is required in order to establish probable cause.

In *United States v. Coreas*, 419 F.3d 151 (2d Cir. 2005), another website child pornography case, which was decided barely two weeks after *Martin,* the Court held that a similar search warrant to that issued in *Martin* had been issued without probable cause.

The *Coreas* Court relied heavily upon *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979), in which the Supreme Court had stated, "a person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search a person." *Id.* at 156.

In applying *Ybarra* in the context of *Martin* and other child pornography website membership cases, such as the case at bar, the *Coreas* Court stated,

> Coreas broke no laws in joining the group and visiting its website, provided that he did not download any child pornography while there (and there is no allegation that he did). Many of the activities [the] Candyman [website] facilitated, such as members' chatting with each other, are protected by the First Amendment. Where an organization is not so 'wholly illegitimate' that membership itself necessarily implies criminal conduct, membership alone cannot provide probable cause...

*Id.* at 156-7.

7

The *Coreas* Court continued by finding,

> Even if the sole purpose of [the] Candyman [website] had been to distribute pornography, the claim that mere membership in an organization with an illegal purpose establishes probable cause is in conflict with the dictate of *Ybarra* that probable cause be backed, at least in part, by evidence particularized to the target of the search.

*Id.* at 158.

As in *Coreas*, the Government's affidavit in support of a search warrant herein merely alleged that Defendant was a member of the three websites, Candygirls, Xlola, or Lolhouse.

However, crucially, that affidavit runs afoul of *Coreas* because it did not provide any evidence particularized to the target of the search, to wit: Defendant. The affidavit did not allege that Defendant committed any illegal conduct while a member of the website. Indeed, unlike *Martin* and *Coreas*, the affidavit submitted in support of the search warrant herein was not even clear as to whether and to what extent any activity - legal or illegal - purportedly took place or was capable of taking place on the Candygirls, Xlola, or Lolhouse websites.

Because of the lack of any particularization in Mr. Raudenski's affidavit herein, as far as anyone is concerned, Defendant's membership in the three websites could have been limited to the exercise of his First Amendment right to free speech with other members, as was the case in *Coreas*.

In light of the foregoing, for the same reasons that probable cause was found lacking in *Coreas*, probable cause was lacking herein.

Although the *Coreas* Court indicated that it was bound by the earlier *Martin* holding, it nonetheless signaled the instability of *Martin* and that *Martin* presented the outer limit of probable cause even where sufficient particulars as to the content of a website had been

8

demonstrated. This was borne out later by the same Court in the same case, in *United States v. Martin*, 426 F.3d 83 (2d Cir. 2005), where the Court, upon rehearing as to another issue, opted to revisit its prior decision.

Upon rehearing, the *Martin* Court stressed the importance of the actual content on the website to which the Defendant therein had been a member and explicitly stressed the importance of the welcome message on the website in that case - a welcome message which the Court found to evidence its purpose as being the illicit trade of child pornography.

As indicated above, however, no similar evidence to that supporting the *Martin* and *Coreas* decisions was provided in the Raudenski affidavit. Rather, that affidavit is devoid of any factual evidence from which it could reasonably have been concluded that the purpose of the Candygirls, Xlola, or Lolhouse websites was for the illicit trade of child pornography. Mr. Raudenski's affidavit notably is silent as to the express stated purposes of these websites.

Mr. Raudensky's affidavit confirms that the only evidence of the content of these websites was obtained from hpay website. However, the hpay website only exhibited alleged images which purportedly could be found on these other websites, and no factual evidence was provided to determine the stated purposes of these other websites (such as its welcome message, site format, site layout, etc.).

However, even if the hpay website is viewed as an informant, its declaration as to the content of the other websites would have needed to be "corroborated in material respects," *United States v. Wagner*, 989 F.2d 69, 73 (2d Cir. 1993); *United States v. Shamsideen*, 2004 W.L. 1179304 (S.D.N.Y. 2004), which clearly was not done. In any event, probable cause still would have required the Government to satisfy the specific factual requirements as to the

9

overriding purpose of each of the three websites in issue herein, as set forth in *Martin* and *Coreas*, which it clearly did not do.

Because there was no factual evidence in Mr. Raudenski's affidavit that the three websites in issue herein were ever visited by Mr. Raudenski or the agents from ICE, that any of the three websites actually contained child pornography, or that any of the three websites evinced an overriding purpose to facilitate the download of child pornography, the affidavit provided by Mr. Raudenski simply was inadequate to establish probable cause.

In light of the foregoing, probable cause was lacking in the issuance of a search warrant herein and the search conducted pursuant to that warrant was illegal.

B) Any Evidence Seized Pursuant To, Or Statements Obtained Incidental To, The Search Of Defendant's Residence Must Be Suppressed As Fruit Of The Poisonous Tree

Any evidence seized from Defendant's home as the result of a search warrant lacking in probable cause must be suppressed, along with any statements made to agents incidental to that search.

The exclusionary rule prohibits the introduction of evidence obtained through the direct and indirect result of an unlawful search and seizure. *See Wong Sun v. United States*, 371 U.S. 471 (1963). Exclusion applies to physical evidence seized in an illegal search as well as to "confessions or statements of the accused ..." *United States v. Crews*, 445 U.S. 463, 470 (1980).

Although a question could arise as to attenuation of the statements, such as where circumstances or time intervenes, attenuation is not an issue herein since the statements allegedly made by Defendant herein were clearly made during the search of his home, would not have been given had the illegal search not been given, and, therefore, were incidental to the search and

10

subject to suppression. *See e.g. Brown v. Illinois*, 422 U.S. 590 (1975); *United States v. Thompson*, 35 F.3d 100 (2d Cir. 1994); *United States v. Fisher*, 702 F.2d 372 (2d Cir. 1983).

In light of the foregoing, the evidence seized from Defendant's home as a result of the illegal search warrant must be suppressed as fruit of the poisonous tree, along with the statements allegedly made by Defendant incidental to that search.

C)     Even If The Search Warrant Is Not Defective On Its Face, Defendant Is Entitled To A *Franks* Hearing Based Upon Mr. Raudenski's Clearly False And Misleading Affidavit

In *Franks v. Delaware*, 438 U.S. 154 (1978), the Supreme Court ruled that a defendant may challenge the validity of a search warrant on the basis that the supporting affidavit contained deliberately or recklessly false or misleading material and ruled that any evidence obtained pursuant to a search warrant relying upon such an affidavit may be suppressed, where the remainder of the affidavit was insufficient to establish probable cause. *Id.* at 155-6. *Accord United States v. Canfield*, 212 F.3d 713, 717-18 (2d Cir. 2000).

An affidavit is misleading if material information is omitted. *Id.* at 718; *Rivera v. United States*, 928 F.2d 592, 604 (2d Cir. 1992).

An affidavit also is misleading if it is not "truthful" in the sense that the information put forth is not believed or appropriately accepted by the affiant as true. *Franks, supra* at 164.

To prove a reckless disregard of the truth, it must be shown that there exist "serious doubts" as to the truthfulness of an allegation. *United States v. Whitley*, 249 F.3d 614, 621 (7th Cir.); *United States v. Perez*, 247 F.Supp.2d 459, 473 (S.D.N.Y.). Omissions are made with reckless disregard where a fact is withheld "that any reasonable person would have known that this was the kind of thing the judge would wish to know." *Wilson v. Russo*, 212 F.3d 781, 788

11

(3d Cir. 2000)(quoting United States v. Jacobs, 986 F.2d 1231, 1235 (8th Cir. 1993)).

Recklessness may also be inferred where the omitted information was "clearly critical" to the determination of probable cause. *Rivera, supra* at 604.

Clearly, there is serious doubt as to the truthfulness of Mr. Raudenski's contention that "all the websites had advertised that the images contained in the free previews were indicative of the" alleged child pornography contained in those websites. This statement was clearly critical to the magistrate's issuance of a search warrant, since this statement provided the purported link between Defendant's purported membership in the three website and the alleged illicit purposes of those websites.

Although this assertion was intended to induce the magistrate to assume that the websites themselves had advertised the images allegedly viewed by Mr. Raudenski, this assertion clearly was false or misleading insofar as Mr. Raudenski and the other agents never asserted that they actually visited any of the websites to which Defendant allegedly belonged.

The magistrate herein clearly would have wanted to know whether the three websites in issue herein had been accessed. The magistrate herein clearly also would have wanted to know whether child pornography had been observed on those websites and whether an illicit purpose had been discernible from the actual content on those websites.

Had the magistrate issuing the search warrant known that neither Mr. Rudenski or the other agents actually visited any of these websites, it is clear that probable cause would have been found lacking and that the search warrant of Defendant's home would not have been issued.

In light of the foregoing, in the event this Court does not find that the search warrant was illegal due to a lack of probable cause, Defendant is nonetheless entitled to a *Franks* hearing to

12

determine whether or not the affidavit supporting the warrant was intentionally or recklessly false or misleading.

## CONCLUSION

The search of Defendant's home violated Defendant's Fourth Amendment right against illegal search and seizure and the evidence allegedly seized from that search, together with any statements allegedly made by Defendant incidental to that search, and Defendant's motion to suppress the evidence and statements allegedly obtained as a result of that search must be suppressed as fruit of the poisonous tree.

Dated: Chester, New York
October 12, 2007

RESPECTFULLY SUBMITTED,

Greenwald Law Offices

by: _____
Gary Greenwald (GG 4605)
Attorney for Defendant
BERNARD S. BEEBE
99 Brookside Ave.
Chester, New York  10918
(845) 469-4900

13