UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA,                    :

             - v. -                    :          07 Cr. 542 (SCR)

BERNARD BEEBE,                    :

            Defendant.                    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


# MEMORANDUM OF LAW OF THE UNITED STATES OF AMERICA IN OPPOSITION TO THE DEFENDANT'S PRETRIAL MOTIONS


MICHAEL J. GARCIA
United States Attorney for the
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007


Richard C. Tarlowe
Assistant United States Attorney
    -Of Counsel-

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................1

BACKGROUND ..................................................................................................................2

    A.  The Search Warrant ...........................................................................................3

    B.  The Defendant's Statements .............................................................................3

    C.  The Charges .......................................................................................................3

ARGUMENT ......................................................................................................................4

    I.   THE COURT SHOULD DENY THE DEFENDANT'S MOTION
       TO SUPPRESS PHYSICAL EVIDENCE.......................................................5

          A.   The Search Warrant Was Supported by Probable Cause ........................6

             1.   Applicable Law ...............................................................................6

             2.   Discussion .......................................................................................6

          B.   Even if the Warrant Were Deficient, Law Enforcement Agents
             Relied on the Warrants in Good Faith ....................................................6

          C.   The Defendant Is Not Entitled to a Franks Hearing ...............................6

    II.  THE COURT SHOULD DENY THE DEFENDANT'S MOTIONS TO
        SUPPRESS HIS STATEMENTS ......................................................................6

CONCLUSION....................................................................................................................6

## PRELIMINARY STATEMENT

The United States of America respectfully submits this memorandum of law in opposition to defendant Bernard Beebe's motions to suppress evidence.

The defendant moves this Court for (1) an order suppressing physical evidence seized on August 23, 2007 from the defendant's residence pursuant to a search warrant on the grounds that the affidavit in support of the warrant failed to establish probable cause and was false or misleading and (2) an order suppressing statements made by the defendant to law enforcement agents on August 23, 2007 on the grounds that the statements resulted from an unlawful search and were obtained in violation of the defendant's rights under the Fifth and Sixth Amendments. In the alternative, the defendant seeks an evidentiary hearing. The Court should deny the defendant's motions in their entirety.

## BACKGROUND

### A.    The Search Warrant

In February 2006, a Special Agent with Immigration and Customs Enforcement (ICE) who was working in an undercover capacity entered the website with the address www.firelols.biz. See Search Warrant, Greenwald Aff., Ex. B ¶ 9. The website displayed numerous visual depictions constituting child pornography and advertised that many more images and videos were available. Id. In order to purchase "instant access" to this additional material, users were directed to click on a link. Id. The agent clicked on that link, which redirected him to another site, www.hpay.biz ("hpay.biz"). Id. The hpay.biz site allowed users to purchase access to the www.firelols.biz website and other sites. Id. ¶¶ 9-10. In particular, the hpay.biz site allowed users to purchase 30-day or 60-day subscriptions to a list of thirteen sites, and set forth the prices for each site. Id. Hpay.biz also offered customers various methods of payment, including through an electronic commerce transaction company called "E-Gold,"

which hpay.biz described as "a very easy way to join us and keep your privacy 100% guaranteed." Id. ¶ 9.

In addition to providing users the opportunity to purchase access to these thirteen sites, hpay.biz also offered users the opportunity to download free previews for each of the sites. Id. ¶ 11. ICE agents downloaded all of the material contained in the free previews for each of the thirteen sites. Id. ¶ 12. The material consisted exclusively of visual depictions constituting child pornography. Id.

Thereafter, an ICE agent purchased a subscription to one of the thirteen sites, namely, www.firelols.biz. Id. ¶ 15. Upon accessing the site as a subscriber, the agent downloaded all of the material available on the site. Id. Consistent with the images that had been provided on the preview page, the material on the website consisted exclusively of visual depictions constituting child pornography. Id.

Two ICE agents also sent emails, from undercover email accounts, to a customer service email address associated with the sites. Id. ¶ 13. The ICE agents claimed in their emails that they were having difficulty signing up for the websites and requested an E-Gold account number into which they could deposit funds to purchase access to the sites. Id. Both agents received email responses, and each response advised them that they could purchase access by transferring money directly into an E-Gold account number. Id. ¶ 14. The two emails from customer service each provided a different E-Gold account number. Id. ¶ 14. Based on this information, ICE issued a summons to E-Gold seeking, among other things, account profiles and transaction histories for all subscribes who had deposited money into either of the two E-Gold account numbers provided in the emails from customer service. Id. ¶ 16.

The information provided in response to the summons showed that one of the subscribes who had transferred money into these accounts was an individual who had given the name Bernard Beebe, the address 110 Jewell Street, Maybrook, New York, and the email address dbeebe1@hvc.rr.com.  Id. ¶ 16.  An ICE agent determined that this individual had used his E-Gold account to purchase access to three of the sites listed on hpay.biz.  Id. ¶ 17.  Specifically, on February 11, 2007, the individual paid $45 to access "CandyGirls" for 30 days and $45 to access "XLola" for 30 days.  Id.  On February 25, 2006, the same individual paid $150 to access "LolHouse" for 30 days.  Id.  The amounts paid by Beebe exactly match the prices that were listed on hpay.biz for subscriptions to these sites for these durations.  Id. ¶ 10.

The agent determined, based on records from a commercial database, that Bernard Beebe resided at 110 Jewell Street in Maybrook, New York.  Id. ¶ 19.  In addition, according to Time Warner Cable, the account for that residence belonged to BJ and Deborah Beebe, and their email accounts were dbeebe1@hvc.rr.com and bbeebe1@hvc.rr.com.  Id. ¶ 20.

In addition to describing the above aspects of the investigation, the affidavit in support of the search warrant described the typical characteristics of child pornography collectors and explained the use of the Internet for child pornography.  Id. ¶¶ 21-28.  The affidavit established, among other things, that collectors of child pornography seek to increase the size of their collections and typically retain their materials for many years, possibly even their entire adult lives.  Id. ¶ 25.

On August 1, 2006, based on an affidavit setting forth the above facts, Magistrate Judge George A. Yanthis signed a search warrant authorizing a search of the defendant's residence.  Id. ¶ 4.  Agents did not execute that search warrant, however, because after obtaining the warrant, agents learned that the defendant and his family were away on vacation.  Id.  On

August 21, 2006, agents learned that the defendant appeared to have returned home.  Id.
Because the initial search warrant authorized by Judge Yanthis had expired by that time, the
Government submitted another application for a search warrant, based on the same affidavit.  Id.
On August 22, 2006, Magistrate Judge Mark D. Fox authorized the new search warrant.

**B.**    **The Defendant's Statements**

Law enforcement agents executed the search warrant on August 23, 2007 and
seized several computers from the defendant's home.  The defendant, who was not home at the
time the search was executed, drove on his own from his workplace on Long Island to the ICE
office in Manhattan for an interview with agents.  While there, he was interviewed by two ICE
agents and, at the conclusion of the interview, he left the ICE office.

During the interview, Beebe stated, among other things, that he possessed an E-
Gold account; he had used his E-Gold account to purchase child pornography; he had viewed
pornography including young female teenagers; and images of young females would be found on
what he identified as his computer, which had been seized from his residence.  Compl. ¶ 5.  A
forensic examination of the hard drive of that computer revealed at least 50 video files and 250
images containing visual depictions constituting child pornography.  Id. ¶ 6.

**C.**    **The Charges**

The defendant was arrested on November 3, 2007 pursuant to a complaint that
was filed on November 1, 2007.  On or about June 13, 2007, a grand jury returned a two-count
Indictment against Beebe.  Count One charged Beebe with receiving and distributing child
pornography, in violation of Title 18, United States Code, Section 2252A(a)(2)(B), and Count
Two charged Beebe with possessing child pornography, in violation of Title 18, United States
Code, Section 2252A(a)(5)(B).

## ARGUMENT

**I.    THE COURT SHOULD DENY THE DEFENDANT'S MOTION TO SUPPRESS PHYSICAL EVIDENCE**

The defendant seeks suppression of the evidence seized from his residence on the grounds that the affidavit in support of the search warrant lacked probable cause and was false or misleading.  This claim lacks merit and should be denied without a hearing.  First, the affidavit plainly provided a sufficient basis for the Magistrate's finding of probable cause.  Second, even if the affidavit were deficient, suppression would not be warranted because the agents acted in good faith in relying on the search warrant.  Third, the defendant is not entitled to a Franks hearing because his claim that the affidavit was false or misleading relies merely on conjecture.  Moreover, even if the defendant were correct that a single sentence in the affidavit was false or misleading, which he is not, the claim would still fail because the defendant has not made the requisite showing for a Franks hearing.

**A.    The Search Warrant Was Supported by Probable Cause**

In arguing that the affidavit lacked probable cause, the defendant distorts the substance of the affidavit, improperly seeks to elevate the applicable standard of review, and misstates the holding of one of the principal cases on which he purports to rely.

**1.    Applicable Law**

The Fourth Amendment provides that search warrants shall not be issued, except "upon probable cause, supported by Oath or affirmation."  U.S. Const. amend. IV.  A judge's probable cause determination is not overly strict.  United States v. Martin, 426 F.3d 68, 74 (2d Cir. 2005).  Rather, the judge must "simply . . . make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place."  Illinois v.

Gates, 462 U.S. 213, 238 (1983). Such determinations must be approached in a practical way,

id. at 232, because "probable cause is a flexible common-sense standard." Texas v. Brown, 460

U.S. 730, 742 (1983). "[P]robable cause is a fluid concept - turning on the assessment of

probabilities in particular factual contexts - not readily, or even usefully, reduced to a neat set of

legal rules." Gates, 462 U.S. at 232. "The process does not deal with hard certainties, but with

probabilities. . . . [T]he evidence . . . must be seen and weighed not in terms of library analysis

by scholars, but as understood by those versed in the field of law enforcement." Id. at 231-32

(quoting United States v. Cortez, 449 U.S. 411, 418 (1981)).

 The Supreme Court has held that probable cause does not require a "prima facie

showing":

> Finely tuned standards such as proof beyond a reasonable doubt or
> by a preponderance of the evidence, useful in formal trials, have no
> place in the magistrate's decision. While an effort to fix some
> general, numerically precise degree of certainty corresponding to
> "probable cause" may not be helpful, it is clear that "only the
> probability, and not a prima facie showing, of criminal activity is
> the standard of probable cause."

Gates, 462 U.S. at 235 (quoting Spinelli v. United States, 393 U.S. 410, 419 (1969)).

 Nowhere in his memorandum of law does the defendant address the appropriate

standard of review where, as here, the District Court is faced with a probable cause challenge to

a search warrant issued by a magistrate. "[A]fter-the-fact scrutiny by courts of the sufficiency of

an affidavit [in support of a warrant] should not take the form of de novo review." Gates, 462

U.S. at 236. Rather, the duty of a court reviewing a magistrate's probable cause determination is

"simply to ensure that the magistrate had a substantial basis for . . . conclud[ing] that probable

cause existed." Gates, 462 U.S. at 238-39 (internal quotations omitted); see United States v.

Rosa, 11 F.3d 315, 326 (2d Cir. 1993); United States v. Smith, 9 F.3d 1007, 1012 (2d Cir. 1993);

Rivera v. United States, 928 F.2d 592, 602 (2d Cir. 1991). "A magistrate's determination of probable cause should be paid great deference by reviewing courts," Gates, 462 U.S. at 236, and "doubts should be resolved in favor of upholding the warrant." Rosa, 11 F.3d at 326 (quoting United States v. Travisano, 724 F.2d 341, 345 (2d Cir. 1983)); see Smith, 9 F.3d at 1012. Indeed, "the magistrate's finding of probable cause is itself a substantial factor tending to uphold the validity of [the] warrant." Travisano, 724 F.2d at 345; accord United States v. Jackstadt, 617 F.2d 12, 13 (2d Cir. 1980).

The defendant purports to rely primarily on two Second Circuit cases: (1) United States v. Martin, 426 F.3d 68 (2d Cir. 2005) ("Martin I"), rehearing denied, 426 F.3d 83 (2d Cir. 2005) ("Martin II"), rehearing denied en banc, 430 F.3d 73 (2d Cir. 2005) ("Martin III") and (2) United States v. Coreas, 419 F.3d 151 (2d Cir. 2005) ("Coreas I"), rehearing denied, 426 F.2d 615 (2d Cir. 2005), rehearing denied en banc, 430 F.3d 73 (2d Cir. 2005) (denying rehearing en banc for both Martin and Coreas). Notably, in both Martin and Coreas, the Second Circuit affirmed the defendant's conviction and upheld the validity of the search warrant in the face of a probable cause challenge. Indeed, in Martin I, the court stated that it had "no difficultly concluding that the corrected affidavit established probable cause." 426 F.3d at 75. Curiously, the defendant repeatedly asserts that the court in Coreas held that there was no probable cause. See Def.'s Br. at 7, 8. Although the Coreas court disagreed with the reasoning of the Martin court, it recognized that it was bound by that holding and, thus, rejected the defendant's probable cause challenge.

Moreover, the Martin and Coreas courts upheld the validity of the search warrants even though the standard of review in those cases was even more stringent than that here. In those cases, the affiant had made false statements in the affidavit and, thus, the question became

whether the affidavit, without those misstatements, still established probable cause. Therefore, the issue presented a <u>de novo</u> question of law. <u>Martin I,</u> 426 F.3d at 74. Here, in contrast, the court need only determine whether the Magistrate Judge had a substantial basis for concluding that probable cause existed, and that standard entails substantial deference to the Magistrate Judge's determination. <u>Gates</u>, 462 U.S. at 236.

##   2.     <u>Discussion</u>

The affidavit in support of the search warrant in this case easily satisfies the relevant standards. The defendant, however, seeks to sidestep the "fair probability" and "substantial basis" standards, <u>Gates</u>, 462 U.S. at 238-39, and to elevate probable cause to a test of near certainty. That is clearly not what the law requires. Rather, the "inquiry turns on an 'assessment of probabilities' and inferences, not on proof of specific criminal conduct beyond a reasonable doubt or even by a preponderance of the evidence." <u>Martin I</u>, 426 F.3d at 76 (quoting <u>Gates</u>, 462 U.S. at 238). "Simply put, probable cause is a 'relaxed standard,' not a legal determination of guilt or liability." <u>Id.</u> at 76 (quoting <u>United States v. Leon</u>, 468 U.S. 897 (1984) and <u>Gerstein v. Pugh</u>, 420 U.S. 103, 121 (1975)). Here, "given the totality of the circumstances and common sense," there was undoubtedly "a fair probability" that evidence of a crime would be found at Beebe's home. <u>Martin I</u>, 426 F.3d at 74.

There is no dispute that the affidavit established that: the "instant access" link on a child pornography website redirected users to the hpay.biz website; the hpay.biz website offered users the means of purchasing access to thirteen websites; the hpay.biz website also provided free previews for each of the thirteen sites; agents downloaded all of the material in the previews for each of the thirteen sites, and that material consisted exclusively of visual depictions of child pornography; and agents purchased access to one of the thirteen sites,

downloaded all of the material on that site, and confirmed that the site exclusively contained

visual depictions of child pornography, just as had been advertised on the preview page.  The

affidavit also established a nexus between these websites and the premises searched.  In

particular, after obtaining records from an electronic commerce account associated with the

hapy.biz site, agents learned that an individual who had given the name Bernard Beebe, the

address 110 Jewell Street, Maybrook, New York, and the email address dbeebe1@hvc.rr.com

had purchased subscriptions to two of the thirteen sites on February 11, 2006 and to another one

of the thirteen sites on February 25, 2006; and according to Time Warner, the account holders for

110 Jewell Street were BJ and Deborah Beebe and their email addresses were

dbeebe1@hvc.rr.com and bbeebe1@hvc.rr.com.  The amounts paid by Beebe matched precisely

the subscription fees listed for these sites on hpay.biz.  The affidavit also described the use of the

Internet for child pornography and established, among other things, that collectors of child

pornography typically seek to expand their collections and retain these collections for long

periods of time, if not indefinitely.

Thus, the affidavit undoubtedly provided the Magistrate Judge "a substantial basis

for . . . conclud[ing] that probable cause existed."  Gates, 462 U.S. at 238-39.  Not surprisingly,

both of the Magistrate Judges presented with the affidavit in this case separately determined that

it established probable cause.  Cf. Travisano, 724 F.2d at 345 ("[T]he magistrate's finding of

probable cause is itself a substantial factor tending to uphold the validity of [the] warrant.").

Yet, notwithstanding all of these facts, the defendant claims that the affidavit did not establish

probable cause because the agent relied on the contents of the preview pages, rather than

purchasing subscriptions to, and examining the contents of, the three sites to which Beebe had

purchased subscriptions.  This argument lacks merit.

The preview pages provided a reasonable indicator of the contents of the websites to which the defendant purchased subscriptions, as well as what the defendant intended to find in those websites. Indeed, in <u>Martin</u>, the Second Circuit relied heavily on the contents of the E-group's "welcome page," which is the functional analog of the preview pages here, in determining that the affidavit established probable cause.[1] In <u>Martin I</u>, the court noted that the "welcome message unabashedly announced that its essential purpose was to trade child pornography," 426 F.3d at 74, and concluded that "[i]t is common sense that an individual who joins such a site would more than likely download and possess such material." <u>Id.</u> at 75. In <u>Martin II</u>, the court reiterated that "[w]e also have no difficulty concluding that the activity of subscribing to the girls12-16 e-group, after being prompted by its <u>name and welcome message</u>, and adhering to membership despite the site's contents, was sufficient to support a finding of probable cause." 426 F.3d at 87 (emphasis added). In <u>Martin III</u>, the court once again reiterated the importance of the welcome message: "this case is not about an accidental tourist who while casually surfing the internet stumbles upon a website with a 'few clicks of a mouse.' Rather, this case is about a man who visited a Yahoo! e-Group entitled 'girls12-16,' saw the e-Group's sexually explicit welcome message - which clearly announced its predominantly illegal purpose - affirmatively joined the e-Group, and remained a member of that e-Group for two weeks until it was shut down." 430 F.3d at 74.

Indeed, notwithstanding the fact that the agent viewed preview pages for the three sites to which Beebe subscribed rather than purchasing subscriptions to those sites, the affidavit in this case established an even greater likelihood that evidence of a crime would be found at the

---

[1] An E-group is "an internet forum through which persons with similar interests can interact by e-mail and online 'chat,' and by posting messages, pictures, and videos to the group's website." <u>Martin I</u>, 426 F.3d at 70 n.1.

defendant's residence than did the affidavit in <u>Martin</u>.  Significantly, in <u>Martin</u>, the Second

Circuit concluded that membership in a child pornography site "reasonably implied use of the

website."  <u>Martin I</u>, 426 F.3d at 75; <u>see</u> <u>United States v. Froman</u>, 355 F.3d 882, 890-91 (5th Cir.

2004) (finding it to be "common sense" that one who "voluntarily joins" a child-pornography

group and "remains a member of the group . . . without cancelling his subscription . . . would

download such pornography from the website and have it in his possession") (quoted with

approval in <u>Martin I</u>).  Here, there is even a stronger basis for believing that membership in the

sites implied use of those sites.  In particular, unlike the E-group in Martin, which was free and

required only a "click [of] a button" to join, <u>Coreas I</u>, 419 F.3d at 153, the sites to which Beebe

purchased access required users to pay a membership fee.  The affidavit in this case established

that someone using the defendant's name and address purchased <u>three different subscriptions</u> to

these sites.

Moreover, the <u>Martin</u> court attached significance to the mere failure of the

defendant to cancel his membership over a two-week period.  <u>Martin I</u>, 426 F.3d at 75. Here, the

defendant actually took affirmative steps subsequent to joining the site that bolster the finding of

probable cause.  In particular, he joined a third site two weeks after joining the first two, for even

more money than he had paid for the first two.  It is difficult to conceive of any intent other than

to use the websites where someone has made three separate purchases, for more than $200, over

the course of two weeks.

In addition, the welcome message in <u>Martin</u> indicated that the E-group had a dual

purpose, one of which was lawful (i.e., to engage in text-based chats) and the other unlawful

(i.e., to share visual depictions of child pornography).  Thus, in <u>Martin</u>, there was no way to

distinguish between people who may have joined the site for the lawful purpose and those who

joined for the unlawful purpose.  Here, in contrast, the preview pages exclusively advertised illegal images of child pornography, and the site to which the agents subscribed contained exclusively visual depictions of child pornography.  Thus, there was no indication that the sites to which Beebe subscribed served any purpose other than an unlawful one, or that someone would have any reason for joining those sites other than to view and download child pornography.  Therefore, the defendant's assertion that the "defendant's membership in the three websites could have been limited to the exercise of his First Amendment right to free speech with other members, as was the case in Coreas" makes little sense.  See Def.'s Br. at 8.  There is no indication that there was any "speech" at all on the sites at issue in this case and, in any event, notwithstanding this concern, the court in Coreas upheld the search warrant.

Furthermore, the agents did not rely solely on the preview pages.  Rather, they obtained a subscription to one of the sites -- albeit not one of the sites to which Beebe subscribed -- to ascertain whether the preview page did, in fact, accurately represent the contents of the sites.  After purchasing a subscription to one of the thirteen sites listed on hpay.biz, agents downloaded all of the material available on that site, and that material consisted exclusively of child pornography, just as had been advertised on the preview page.  See Warrant ¶ 15.  This further supports the finding of probable cause, as there is no reason to believe the preview page was accurate for the one site to which agents purchased access, but not for the other sites similarly listed on hpay.biz.[2]

---

[2]  It is thus surprising that when analogizing the hpay.biz site to an informant, the defendant asserts that no corroboration was provided for the information on hpay.biz.  See Def.'s Br. at 9.  The agent clearly tested and corroborated the reliability of the preview pages by purchasing a subscription to one of the sites and downloading all of its contents.

In addition, to the extent the defendant suggests the contents of the hpay.biz site are irrelevant, the affidavit also establishes a nexus between the defendant's activities and the hpay.biz site.[3]  First, the defendant's purchases match exactly the prices listed on the hpay.biz site for the subscriptions he purchased.  Second, common sense dictates that it is unlikely that the defendant happened, by coincidence, to have subscribed to three of only thirteen sites that appear on hpay.biz without having any connection to the hpay.biz site.  Third, the agents did not obtain records of Beebe's purchases from separate subpoenas to the three sites he joined, but through two E-Gold account numbers that they obtained by emailing a customer service e-mail address associated with hpay.biz and purporting to have difficulty purchasing subscriptions to the sites.

Furthermore, in arguing that the affidavit failed to establish probable cause, the defendant unjustifiably ignores that portion of the affidavit that describes the use of the Internet for child pornography and the typical characteristics of child pornography collectors. Remarkably, the defendant asserts that the only "substantive" allegations in the search warrant affidavit are contained in Paragraphs 8 through 20.  See Def.'s Br. at 1.  That is plainly wrong. In fact, the allegations concerning characteristics of child pornography collectors, see Warrant Aff. ¶¶ 23-28, not only are "substantive" but were expressly relied upon by the Second Circuit in Martin in holding that there was probable cause.  See Martin I, 426 F.3d 75.  Thus, although the defendant simply dismisses out of hand the significance of several paragraphs of the affidavit, those factual allegations are both relevant to, and supportive of, the probable cause determination.

---

[3]     Despite the defendant's speculation and hyperbole to the contrary, the agent indisputably visited each of the thirteen sites, including the three for which Beebe purchased subscriptions. Indeed, the agent has retained "screen captures" taken before signing the affidavit that show what these sites looked like at the time.  However, because this is not clearly established in the affidavit, the Government analyzes the probable cause determination without relying on this information.

Finally, the defendant attempts to rely on concerns expressed by the dissent in Martin and the court in Coreas even though those courts both upheld the validity of the search warrants in those cases.  In any event, those concerns are simply not present here.  The search warrants in Martin and Coreas were based on an individual's (non-paid) membership in an E-group that involved the sharing of visual depictions, but that also included text-based discussions.  Significantly. the text-based discussions, though repugnant, are not illegal because the child pornography statute deals only with visual depictions. See Martin I, 426 F.3d 78-79, 80 (dissenting opinion); see also Coreas I, 419 F.3d at 156.  Thus, one of the key concerns related to the inability to distinguish between members who joined for an illegal purpose and those who joined for a Constitutionally-protected purpose.  Id.  In this case, in contrast, the preview pages contained only visual depictions and, likewise, when agents purchased access to one of the sites, they confirmed that it contained only visual depictions.  Moreover, any concern that a search warrant based solely on membership in a website runs the risk of ensnaring someone who innocently or inadvertently joins a website, see Coreas I, 419 F.3d at 158 (noting that someone could have joined the E-group "out of curiosity or even from sheer inadvertence"), is nonexistent where, as here, the defendant has made three separate purchases, and the third purchase occurred two weeks after the first two.

**B.**     **Even If the Warrant Were Deficient, Law Enforcement Agents Relied on the Warrants in Good Faith**

Even if the search warrant were not supported by probable cause, the defendant still would not be entitled to suppression of the evidence because the agents executing the warrant relied on it in good faith.  Although the defendant fails to address this well-established principle, the Supreme Court has held that the exclusionary rule and its harsh remedy of suppression do not apply where evidence is "obtained in objectively reasonable reliance on a

subsequently invalidated search warrant." United States v. Leon, 468 U.S. 897, 922 (1984).

"The essential rationale underlying [this] good faith exception is that the exclusionary rule 'cannot be expected, and should not be applied, to deter objectively reasonable law enforcement activity.'" United States v. Cancelmo, 64 F.3d 804, 807 (2d Cir. 1995) (quoting Leon, 468 U.S. at 919); see also Arizona v. Evans, 514 U.S. 1, 10 (1995) (use of exclusionary rule is not warranted where it does not result in deterrence). The pivotal question in a particular case is thus "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." Leon, 468 U.S. at 922 n.23; see also United States v. Moore, 968 F.2d 216, 222 (2d Cir. 1992). If the reviewing court finds that the agents' reliance on the warrant was objectively reasonable, suppression is not warranted. See, e.g., United States v. Roberts, 852 F.2d 671, 675 (2d Cir. 1988). Here, reliance on the warrant undoubtedly was objectively reasonable.

The only instances where the good faith exception does not apply are where: (1) the magistrate was misled by information the affiant knew was false; (2) the magistrate wholly abandoned her judicial rule; (3) the supporting affidavit lacked any indicia of probable cause; or (4) the warrant was insufficiently specific. Leon, 468 U.S. at 923. None of those circumstances are present here.

No reason exists to believe that the agents executing the warrant acted in anything other than good faith by relying on the warrant. The defendant's argument that the affidavit was misleading is inadequate because it relies only on conjecture. Moreover, the defendant's conjecture is not even accurate. In particular, the defendant argues that the agent misled the Magistrate by creating the impression, through a single sentence, that he visited each of the thirteen sites listed on hpay.biz when, according to the defendant, the agent only visited the

hpay.biz site. In reality, though, the agent did visit each of the thirteen sites prior to signing the affidavit. In fact, he even captured and retained "screen shots" showing what each of the websites looked like at the time. Although the Government would establish this at an evidentiary hearing, such a hearing is unwarranted because the defendant has failed adequately to allege that the Magistrate Judge was misled by any information the affiant knew was false. In fact, as set forth below, pp. 18-19, the defendant's claim that the affidavit was false or misleading is belied by his own argument.

**C.    The Defendant Is Not Entitled to a Franks Hearing**

The defendant seeks a Franks hearing by pointing to a single sentence in the affidavit that he claims is false or misleading. The defendant is not entitled to a Franks hearing because he has failed to make the substantial preliminary showing required. In fact, there can be no plausible claim either that the affidavit was misleading or that the affiant acted intentionally or with a reckless disregard for the truth given that the defendant himself asserts that the non-misleading information is clearly set forth in the affidavit.

In Franks v. Delaware, 438 U.S. 154 (1978), the Supreme Court held that "where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held." 438 U.S. at 155-156 (emphasis added). The Court continued:

> To mandate an evidentiary hearing, the challenger's attack must be more
> than conclusory and must be supported by more than a mere desire to
> cross-examine. There must be allegations of deliberate falsehood or of
> reckless disregard for the truth, and those allegations must be
> accompanied by an offer of proof. They should point out specifically the
> portion of the warrant affidavit that is claimed to be false; and they should

16

> be accompanied by a statement of supporting reasons.  Affidavits or sworn
> or otherwise reliable statements of witnesses should be furnished, or their
> absence satisfactorily explained.  Allegations of negligence or innocent
> mistake are insufficient.

Franks, 438 U.S. at 171; see also Rivera v. United States, 928 F.2d 592, 604 (2d Cir. 1991)

(noting that "[t]he Franks standard is a high one"); United States v. Campino, 890 F.2d 588, 591-

92 (2d Cir. 1989)) (affirming trial court's denial of Franks hearing "because appellants failed to

produce evidence of deliberate falsehood or recklessness in the affidavit").

   In support of his motion for a Franks hearing, the defendant points to one

sentence that he claims is false or misleading – namely, "all the websites had advertised that the

images contained in the free previews were indicative of the material that would be found in the

websites, themselves."  Warrant ¶ 12; Def.'s Br. at 12.  The defendant claims that the sentence is

false or misleading because it suggested that the agent visited each site, even though, according

to the defendant, the agent visited only the hpay.biz site.  See Def.'s Br. at 12.  This argument

lacks merit and fails for three independent reasons.

   First, the defendant's claim is not "accompanied by an offer of proof," Franks,

438 U.S. at 171, as required, but rather, relies on the defendant's conjecture.  Although the agent

purchased a subscription to only one of the sites, he did, in fact, visit all thirteen sites, including

the three sites to which Beebe purchased subscriptions.  As discussed, the agent even captured

and retained images that show what each of the sites looked like at the time.

   Second, even if the defendant were right and the agent had not visited the sites, a

Franks hearing would not be warranted because the defendant has failed to make the requisite

preliminary showing that the agent acted intentionally or with a reckless disregard for the truth.

In fact, the defendant's argument is nonsensical because his "evidence" that the statement was

false or misleading comes not from any extrinsic source, but from other portions of the affidavit

itself.  This is evident from the defendant's own assertion that "[i]t is apparent from Mr. Raudenski's affidavit that [the allegedly misleading or false] statement was made based upon previews allegedly contained in the hpay website (and attributed to these other three sites by the hpay website) and not based upon anything observed or discovered directly in the Candygirls, Xlola, or Lolhouse websites themselves."  Def.'s Br. at 2 (emphasis added).  Since the defendant himself asserts that the non-misleading information is "apparent from [the] affidavit," he cannot possibly claim either that the affidavit is misleading or that the affiant acted intentionally or with a reckless disregard for the truth.

Indeed, it defies logic to argue, as the defendant does, that the agent was intentionally trying to mislead the judge, but nonetheless disclosed the "truth" everywhere else in the affidavit.  The defendant again exposes the absurdity of his argument when he asserts, on the one hand, that the agent misled the court by suggesting he visited the individual sites, while arguing, on the other hand, that "Mr. Raudenski and the other agents never asserted that they actually visited any of the websites to which Defendant allegedly belonged." Def.'s Br. at 12.

Thus, the defendant's claim, though framed as one of a misleading or false statement, amounts, at most, to an allegation that a single sentence is vague or ambiguous.  This allegation falls far short of the substantial showing necessary to warrant a Franks hearing.  See United States v. Canfield, 212 F.3d 713, 718 (2d Cir. 2000) ("[E]very statement in a warrant affidavit does not need to be true."); United States v. Cook, 348 F. Supp. 2d 22, 28 (S.D.N.Y. 2004) ("Allegations that amount to negligence or innocent mistake do not constitute the required

showing [to warrant a Franks hearing].").  This is particularly so given that the defendant himself

has asserted that the rest of the affidavit eliminates any potential ambiguity in that one sentence.[4]

In any event, a Franks hearing is unnecessary because even without that sentence,

the affidavit would still establish probable cause.  See Martin I, 426 F.3d at 73-74 ("If the

corrected affidavit supports probable cause, the inaccuracies were not material to the probable

cause determination and suppression is inappropriate.") (citing Canfield, 212 F.3d at 718).  That

is, even if the defendant were correct, and the agent had not visited the three sites to which Beebe

purchased access, the affidavit would still provide probable cause.  Indeed, the discussion of

probable cause above does not even rely on that sentence and, as set forth therein, pp. 8-14, the

affidavit still establishes probable cause.

## II.    THE COURT SHOULD DENY THE DEFENDANT'S MOTION TO SUPPRESS HIS STATEMENTS

The defendant moves to suppress his statements to law enforcement officers on

August 23, 2007 based on two grounds: (1) the statements purportedly represent the fruits of an

illegal search, and (2) agents allegedly did not provide Miranda warnings to the defendant.  The

Court should deny the motion without a hearing.  First, for the reasons set forth above, the search

was lawful and, therefore, the statements cannot possibly be the fruits of an unlawful search.

Second, although the Government disputes the defendant's allegations regarding the lack of

---

[4]    Curiously, in defense counsel's affidavit, he relies on an entirely different statement than he does in his memorandum of law as the allegedly false or misleading statement in support of a Franks hearing.  In the affidavit, he alleges that the agent's statement that the three sites to which Beebe subscribed were "within the 'www.lolsites.biz' group of child pornography sites" was misleading.  Greenwald Aff. ¶¶ 19-20.  Nevertheless, this claim suffers from the same defects as the claim in the defendant's memorandum of law.  In particular, the defendant's "evidence" that this statement was false or misleading does not come from any extrinsic source, but from the affidavit itself: "[b]ased upon the investigation conducted by the agents, as set forth in the affidavit, this statement was misleading."  Greenwald Aff. ¶ 20.  In any event, there is no basis to believe that the statement is not factually accurate.

Miranda warnings, those allegations, even if true, would not give rise to suppression because the defendant has failed to allege any circumstances that would enable a finding that the interview was custodial.  Therefore, he is not entitled to a hearing.  See United States v. Thomas, No. 04 Cr. 455 (JSR), 2005 WL 292739, at *1 (S.D.N.Y. Feb. 8, 2005) (denying evidentiary hearing on motion to suppress because alleged lack of Miranda warnings, even if true, was immaterial where defendant failed to allege facts showing he was in custody).[5]

Law enforcement authorities are required to advise an individual of his Miranda rights when two preconditions are met, namely, custody and interrogation.  See Thompson v. Keohane, 516 U.S. 99, 102 (1995).  Thus, "Miranda warnings are required only where there has been such a restriction on a person's freedom as to render him 'in custody.'"  Oregon v. Mathiason, 429 U.S. 492, 495 (1977).  "[A] custodial setting is one providing 'inherently coercive pressures that tend to undermine the individual's will to resist and to compel him to speak.'"  United States v. Mitchell, 966 F.2d 92, 98 (2d Cir.1992).  In determining whether an individual is in custody for Miranda purposes, "the ultimate inquiry is simply whether there is a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest."  California v. Beheler, 463 U.S. 1121, 1125 (1983) (per curiam) (quoting Oregon v. Mathiason, 429 U.S. at 495).  The mere fact that an individual being questioned by law enforcement officials is the subject or target of a investigation does not trigger the need for

---

[5]     The defendant's memorandum of law does not even mention his motion to suppress his statements based on the purported violation of his rights under the Fifth and Sixth Amendments. Based on the defendant's affidavit, however, it appears that the principal basis for this claim is an alleged lack of Miranda warnings.  The defendant also alleges in his affidavit that he was told by agents during the interview that he did not need a lawyer.  Because the defendant's Fifth and Sixth Amendment claim is not addressed in his memorandum of law, it is not clear whether this allegation also forms part of the basis of that claim.  Nevertheless, the Government addresses each of his allegations and, as set forth below, demonstrates that none provide a basis for suppression or for a hearing.

Miranda warnings.  Mathiason, 429 U.S. at 495; Beckwith, 425 U.S. at 345.  In fact, "Miranda warnings need not be given even if the government's criminal investigation has reached the stage where the defendant is the focus of inquiry."  Burke, 700 F.2d at 84.

The question of whether an interrogation is "custodial" is an objective one. United States v. Kirsteins, 906 F.2d 919, 923 (2d Cir.1990).  "[T]he initial determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned." Stansbury v. California, 511 U.S. 318, 323 (1994).  Because the inquiry "focuses on whether a reasonable person in the same situation would have believed that he was not free to leave," the defendant's "subjective understanding is therefore irrelevant."  Kirsteins, 906 F.2d at 923.  Thus, even if true, the defendant's bare assertion in his affidavit that he thought he was being arrested and felt he was not free to leave is irrelevant, see id., and does not create a contested issue of fact warranting a hearing.

It is well settled in the Second Circuit that a defendant seeking to suppress evidence bears the burden of demonstrating that there are disputed issues of fact that would justify an evidentiary hearing.  See United States v. Gillette, 383 F.2d 843, 848-49 (2d Cir. 1967).  "[A]n evidentiary hearing on a motion to suppress ordinarily is required if the moving papers are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact . . . are in question."  United States v. Pena, 961 F.2d 333, 339 (2d Cir. 1992).  Here, the defendant has failed to satisfy that burden.  He is not entitled to an evidentiary hearing because he plainly has alleged no facts that, if proven, would support a finding that he was in custody at the time he made those statements.  See United States v. Carrasquillo, 2000 WL 45708, at *2 (S.D.N.Y. Jan. 19, 2000) (holding that defendant was not

entitled to evidentiary hearing because he did not "state sufficient facts which, if proven, would have required the granting of the relief requested") (citing <u>United States v. Culotta</u>, 413 F.3d 1343, 1345 (2d Cir. 1969)).

Instead, the defendant merely claims in conclusory fashion that "I felt as if I was not free to leave as the Agents continually asked me questions." Beebe Aff. ¶ 13. The claim that the agents "kept [him] at the office for approximately one hour and a half," <u>id.</u>, clearly does not suffice because even if established, it would not even approach the type of factual circumstances that would enable a finding that he was in custody at the time he made statements to ICE agents. <u>See</u> <u>Thomas</u>, 2005 WL 292739, at *1.

This is particularly true given the undisputed factual circumstances in this case, as well as some of the defendant's own allegations, which weigh heavily <u>against</u> a custodial finding. It is undisputed, for example, that: the defendant was not home at the time agents executed the search warrant; after being informed of the search and of the agents' interest in speaking to him, he drove on his own from Long Island to the ICE office in Manhattan; and he was allowed to leave the ICE office at the conclusion of the interview. Moreover, the defendant's claim that he thought he was being arrested – albeit irrelevant – is undermined by his own sworn allegation that he asked whether he was a subject of the investigation and was told by the agents that it was difficult for them to make that determination. <u>See</u> Beebe Aff. ¶¶ 9-10. It is inconceivable that a reasonable person could have believed he was under arrest while being told by interviewing agents that they did not even know whether he was a subject of their investigation.

That the defendant went to the ICE offices on his own, was allowed to leave at the end of the interview, and, according to the defendant, was told it was not clear whether he was a

suspect are all critical indicators that he was not in custody, and the defendant disputes none of these.  See Mathiason, 429 U.S. at 495 (finding defendant not in custody where he voluntarily came to the police station, was told he was not a suspect, and was allowed to leave without hindrance at the close of the interview); see United States v. Cota, 953 F.2d 753, 756-59 (2d Cir. 1992).

        The fact that the interview took place at the ICE office does not create a custodial environment.  See Oregon v. Mathiason, 429 U.S. at 495.  Nor does the interview become custodial merely because the defendant, who went to the ICE office on his own, did so at the request of the agents. See United States v. Cota, 953 F.2d 753 (holding that defendant was not in custody even though she agreed to be interviewed only after she was removed from her car at gunpoint and handcuffed, and was driven to the police station by the police in an unmarked police car); United States v. Kirsteins, 906 F.2d at 919 (holding that defendant was not in custody even though he was questioned for hours at the U.S. Attorney's Office after the defendant received a letter from the Department of Justice requesting his presence and agent accompanied defendant to the street and back during breaks); see also Thomas, 2005 WL 292739, at *1 (holding that defendant failed to allege facts warranting a hearing on alleged lack of Miranda warnings where he averred that he was present for interview at agents' request).

        In fact, decisions in this Circuit have emphasized that absent an actual arrest, which the defendant does not and cannot allege to have taken place here, a defendant is not "in custody," "unless the authorities affirmatively convey the message that the defendant is not free to leave." United States v. Mitchell, 966 F.2d at 98 (citing Campaneria v. Reid, 891 F.2d 1014, 1021 n. 1 (2d Cir.1989) (law enforcement officials must "act or speak in a manner that conveys the message that they would not permit the accused to leave"); United States v. Guarno, 819 F.2d

28, 31-32 (2d Cir.1987) ("[I]n the absence of actual arrest something must be said or done by the authorities . . . which indicates that they would not have heeded a request to depart or to allow the suspect to do so.") (quoting United States v. Hall, 421 F.2d 540, 545 (2d Cir.1969)). Significantly, the defendant in his affidavit does not allege any such affirmative representation by the agents indicating he was in custody.  In fact, the defendant here actually alleges the contrary; he alleges that agents told him it was not clear whether or not he was a subject of their investigation.  See Beebe Aff. ¶¶ 9-10.

Moreover, even if the defendant's allegation that agents told him he did not need an attorney were true, this would not provide a basis for suppression.  Thomas, 2005 WL 292739, at *2 (denying motion to suppress statements without evidentiary hearing where defendant alleged that he asked agents if he needed a lawyer and they said no; holding that even if allegation were true, it would not amount to a violation of his Fifth or Sixth Amendment rights); see also Diaz v. Senkowski, 76 F.3d 61, 64-65 (2d Cir.1996) (holding that although defendant who was in custody asked whether he needed a lawyer, that question was not sufficient to invoke his right to counsel); United States v. Cohen, 372 F. Supp. 2d 340, 360 (E.D.N.Y. 2005) (holding that, even if true, defendant's allegation that he asked if he needed a lawyer and was told that he did not need one if he had nothing to hide did not amount to violation of his Constitutional rights).

Even assuming the truthfulness of the allegations in the defendant's affidavit, he has alleged no facts that would allow a finding that he was in custody or that would warrant suppression.  Therefore, the Court should deny the motion without a hearing.

## **CONCLUSION**

For the foregoing reasons, the Government respectfully requests that the Court

deny the defendant's pretrial motions in their entirety.

Dated:  White Plains, New York
        November 30, 2007

                                Respectfully submitted,

                                MICHAEL J. GARCIA
                                United States Attorney for the
                                Southern District of New York


                        By: s/ Richard C. Tarlowe
                                Richard C. Tarlowe
                                Assistant United States Attorney
                                (914) 993-1963 (phone)