UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
UNITED STATES OF AMERICA,

                vs.

**REPLY AFFIRMATION**
7:07cr-00542-SCR

BERNARD J. BEEBE,

                      Defendant
-------------------------------------------------------X
STATE OF NEW YORK    )
                      ) ss.:
COUNTY OF ORANGE    )

GARY GREENWALD, ESQ., being duly sworn, deposes and says:

1.    I am an attorney at the Greenwald Law Offices, attorneys of record for the Defendant, Bernard J. Beebe, in the above-captioned matter.

2.    I submit the within Affirmation based upon my own personal knowledge of the facts herein, as well as upon information and belief. The sources of my information and grounds for my belief being conversations with members of our staff as well as an investigation into the facts.

3.    This affirmation is submitted in reply to the Government's Memorandum of Law in opposition to the defendant's pretrial motions.

**<u>Contents Of Affidavit Do Not Establish Probable Cause For Search Warrant</u>**

4.    The Government claims that the Defendant is attempting to "sidestep" the applicable standard of review regarding the search warrant in the instant case. Quite to the contrary, the Defendant clearly has addressed the appropriate standard of review with respect to a probable cause challenge to a search warrant issued by a magistrate.

5.    In fact, as previously set forth in page 5 of the defendant's original Memorandum of Law, the reviewing standard is that the judge must make a "practical, commonsense decision whether given all the circumstances set forth in the affidavit before him, including the 'veracity' and

'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 46 U.S.213, 238 (1983).

6.      In the instant case, the information provided in the affidavit in support of the search warrant, fails to meet this fair probability standard. Frankly, it is the Government that attempts to "sidestep" or avoid in it's entirety, the fundamental issue of the defendant's motion.

7.      As stated in our original papers, in the context of purported child pornography websites, this Circuit has held that in order to justify probable cause, at minimum, the Government must at least have evidence (1) that a person is a member of the pornographic site, and (2) that the "overriding, if not sole purpose" of the website was the trading of child pornography. *United States v. Martin*, 418 F.3d 148 (2d Cir. 2005) republished at 426 F.3d 68 (2d Cir. 2005).

8.      In their opposition papers, the Government has failed to set forth any plausible argument, how the affidavit submitted in support of the search warrant established that the "overriding, if not sole purpose" of the websites to which Mr. Beebe allegedly was a member, was the trading of child pornography. The reason for this failure is simple, the facts set forth in the affidavit, fail to meet the minimum requirement as set forth in *Martin*, *supra*.

9.      There simply was no factual evidence in Agent Raudenski's affidavit, that the three (3) websites in issue herein were ever visited by any agents, or that any of the three (3) websites actually contained child pornography, or that any of the three (3) websites evinced an overriding purpose to facilitate the downloading of child pornography.

10.      In light of these overwhelming defects, the Assistant United States Attorney relies upon the preview pages of another website, of which Mr. Beebe undisputedly was not a member, to attempt to establish the contents of three separate and distinct websites, for which the Government alleges Mr. Beebe was a member. In fact, the Government claims that "the preview pages provided a reasonable indicator of the contents of the websites to which the defendant purchased

2

subscriptions, as well as what the defendant intended to find in those websites." (Government Opp. Memo at 10)

11.    The Government contends that the preview pages of this separate website are the functional analog to the contents of the E-group's "welcome page" in the *Martin* decision. This argument lacks any merit.

12.    First of all, in the instant case, we are dealing with entirely different websites. An E-group is an internet forum through which persons can interact by e-mail and online chat, and by posting messages, pictures, and videos to the group's **website**. To put forth an argument that one is the functional analog of the other, is a clear distortion of what each actually is. Usually in the context of an E-group, as the definition indicates, one is dealing with a single website, On the other hand, in the instant case, each website is entirely separate and distinct from the other.

13.    Additionally, in the *Martin* case, it was established that the defendant was a ***member*** of an internet E-Group, whose primary reason for existence, was the trading and collection of child pornography. In the instant matter, according to Agent Raudenski, he, in an undercover capacity, entered the "www.firelols.biz"website ("firelols.biz") and viewed the banner screen of the firelols.biz website, which displayed numerous sexually explicit images depicting child pornography. (Para. 9 of Exhibit B). He continued on the site and after clicking a link for "Instant Access", was redirected to a payment web page at the URL "https://www.hpay.biz. Id.  At paragraph 11, Agent Raudenski states that "the website also had a preview page, "http://www.lolsites.info/preview/", at which customers where given the opportunity to download free previews of all the thirteen sites listed at hpay.biz."

14.    Critically, throughout the entire affidavit, it is not established, or even asserted, that Mr. Beebe was a member of any of these sites. Therefore, even if the Court should agree that the contents of the E-group's "welcome page" is the functional analog of the preview pages here, the

affidavit fails to set forth that Mr. Beebe was a member of the website that displayed the preview pages. As such, the Government's burden as presented in it's own analysis, is not even met.

15.     The Government additionally contends that the agents did not rely solely on the preview pages, emphasizing the agents obtained a subscription to one of the sites. Notably, the Assistant United States Attorney acknowledges that the website the agents obtained a subscription to, **was not one of the sites to which Mr. Beebe subscribed**. (Government Opp. Memo at 12) The Government argues that since the preview page appeared accurate for the one site the agents purchased access to, there is no reason to believe it was not accurate for the other sites.

16.     This conclusion is a stretch to state the least, and in no fashion meets even the fair probability standard of which the Government relies upon. For the Government to contend that the contents of one (1) of (13) entirely different websites is sufficient to show what is likely to be found on all the websites is entirely incredulous. Moreover, as mentioned previously, the Government's burden as stated in *Martin,* is to show that the "overriding, if not sole purpose" of the website was the trading of child pornography. To argue that this purpose can be shown from the contents of an entirely distinct website, is without any merit. The sole fact that the Government cannot explain is that the affidavit in the instant case failed to provide the magistrate judge with facts sufficient to conclude the overriding, if not the sole purpose of **Candygirls, Xlola, or Lolhouse websites** was to facilitate the receipt and distribution of child pornography.

17.     The Government continues by stating that the affidavit in this case, established an even greater likelihood that evidence of a crime would be found at the defendant's residence than did the affidavit in *Martin*. The Government cites the *Martin* decision for the proposition that membership in a child pornography site "reasonably implied use of the website." The defendant does not necessarily contest this issue of law, however, it is inapplicable to the instant matter.

4

18.     Once again, the Assistant United States Attorney fails to adequately respond to the main issue of the defendant's papers. The defendant maintains, that since the affidavit failed to establish that the "overriding, if not sole purpose" of the three websites in issue herein, was for child pornography, regardless of proof of membership, there was no probable cause for the search. In fact, the magistrate herein was presented with a search warrant affidavit, which failed to demonstrate any purpose of the three websites in issue and the inescapable reason for this is that the affidavit failed to set forth that those websites were ever accessed by the affiant, Mr. Raudenski, or by any other agent of ICE.    Critically, the Government concedes in it's footnote 3 of it's memorandum, that the fact that the agents visited the sites which Mr. Beebe allegedly was a member, **"is not clearly established in the affidavit"**. (Government Opp. Memo at 13, (emphasis added)) Therefore, based upon the Government's own concession that the affidavit does not show the agents visited the sites that Mr. Beebe was allegedly a member, the affidavit could have provided no evidence to the magistrate herein regarding the nature of any content actually found on the three websites in issue herein.

19.     Despite recognizing this deficiency, the Assistant United States Attorney in unsworn fashion, attempts to distract the Court by now claiming that agents did visit all the sites involved. As the Court is aware, the law is clear that in determining the sufficiency of an affidavit to justify a search warrant, the reviewing court may consider only information brought to the magistrate's attention. *U.S. ex rel. DeNegris v. Menser*, C.A.2 (Conn.) 360 F.2d 199; *U.S. v. Taborda*, C.A.2 (N.Y.) 635 F.2d 131. Therefore, this Court should disregard these statements and if anything, view them as a last resort attempt to salvage the insufficient affidavit in this case. Furthermore, the mere fact that the Government now puts these issues in front of the Court, implies they realize the critical

5

defects of the affidavit, despite their claims that "the Government analyzes the probable cause determination without relying on this information".[1] (Government Opp. Memo at footnote 3 at 13)

20.    **As such, probable cause was lacking in the issuance of a search warrant herein and the search conducted pursuant to that warrant, was illegal.**

## Good Faith Exception Does Not Apply

21.    As the Government correctly states, the good faith exception does not apply where: 1) the supporting affidavit lacked any indicia of probable cause, as well as 2) where the magistrate was misled by information the affiant knew was false.

22.    For all the reasons set forth in our original papers, as well as in this reply, it is clear that the supporting affidavit lacked any indicia of probable cause, as such, the good faith exception of which the government relies upon, is not applicable.

23.    Second, as also set forth in our original papers, the magistrate was misled by information the affiant knew was false, therefore, the good faith exception is inapplicable for this reason as well. For this same reason, contrary to the Government claim, the defendant is entitled to a Frank's Hearing .

## Defendant is Entitled to Franks Hearing

24.    As previously set forth in my original affirmation, in his application, Agent Raudenski  represents that the websites "CandyGirls", "Xlola" and "LolHouse" were  within the "www.lolsites.biz," group of child pornography.

25.    Based upon the investigation conducted by the agents, as set forth in his affidavit, this statement was misleading.

26.    Since it was not set forth in the affidavit, that a single agent actually entered the

---

[1] Curiously, if the agents visited these websites, why did they not state this crucial fact in the affidavit?

websites that they state are part of a group of child pornography websites, this statement is clearly misleading to the Court. Without setting forth that agents entered the sites, the agent did not have sufficient knowledge to know what was actually contained on the website. Therefore, without the actual knowledge that these websites contained child pornography, the agents statement to the Court was false and misleading.

27.    The Government now asserts, in unsworn fashion, the agents did enter the site. However, as previously stated, this was not set forth in the affidavit. As such, the only way to resolve this issue would be to grant the appropriate hearing.

28.    Moreover, based upon the information provided to the defendant, as well as the Court in the original application, this statement is false for additional reasons.

29.    First of all, the agents intentionally leads the Court to believe that the (13) thirteen websites are part of a child pornography group. This is obviously done to try to connect the three (3) separate websites that Mr. Beebe was allegedly a member, with the website that the agents actually downloaded illegal material from, and coincidently now falls into the Governments E-group analogy from the *Martin* decision.

30.    As stated previously, each of these websites was separate and distinct. As indicated in the affidavit, one would have to purchase a subscription to each website in order to gain access to that site, contrary to paying one fee for entry into all. For example, in the *Martin* case, membership in the E-group provided access to all of the illegal material in that group. In the instant matter, that is not the case. As such, the agent calling these websites a group, was therefore false and misleading.

31.    Despite the Government's argument to the contrary, without this statement, probable cause would not still exist. In fact, the Government's own reliance on the "group" analogy in it's papers, clearly proves this point without further comment.

32.    Based upon the foregoing, Mr. Beebe contends the he is entitled to a Franks Hearing, pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), to determine whether statements contained

7

in the warrant application were false or misleading, and if so, whether there existed probable cause for the issuance of the search warrant upon the redaction of the offending statements.

## Request to Suppress Defendant's Statement Should Be Granted

33.     First of all, the statements should be suppressed as the fruit of the poisonous tree, because they were derived from the illegal search.

34.     Finally, the Government claims in their Memorandum, that the defendant has failed to allege sufficient facts to support that he was in custody at the time he was questioned.

35.     In short, the defendant maintains, the uncontradicted facts alleged in Mr. Beebe's affidavit are more than sufficient to warrant a hearing relative to suppression of the defendant's statement.

**WHEREFORE,** it is respectfully requested that the Court either issue an Order, pursuant to F.R.C.P. Rule 12(b)(3)( C), suppressing physical evidence upon the ground that such was obtained in violation of the defendant's rights under the Fourth Amendment; and an Order, pursuant to F.R.C.P. Rule 12(b)(3)( C), suppressing statements attributed to the defendant upon the ground that such statements were obtained in violation of the defendant's rights under the Fifth and Sixth Amendments; or in the alternative grant hearings to determine the same, together with such other and further relief as the Court seems just and proper.

Dated:  January 4, 2008
      Chester, New York

              Respectfully submitted,

              GARY GREENWALD (GG4605)
              Greenwald Law Offices
              Attorneys for Defendant
              99 Greenwald Law Offices
              Chester, New York 10918
              (845) 469-4900