Gary Greenwald *
Joanna C. Greenwald**
Joseph G. McKay
Marc R. Leffler ◊
William A. Frank

Erno Poll
Benjamin Greenwald
Jamie C. Greenwald
David L. Gove
Robert E. Noe
Karen M. Alt ◊
Gary H. Forman**
Erica L. Powers,* ■
  LLM Taxation

David A. Brodsky, *Of Counsel*

Also Admitted To Practice In
* MA **NJ ◊CT ■MD

# GREENWALD LAW OFFICES

99 Brookside Avenue
Chester, New York 10918
(845) 469-4900 * Fax (845) 469-2022
Family Law Center Fax: (845)469-1895
Toll Free: 1-866-GREENWALD
*www.GreenwaldLaw.com*

*Please Reply to Chester Office*

Sullivan County
138 Sullivan Street
P.O. Box 266
Wurtsboro, NY 12790
(845) 888-2456
Fax: (845) 888-5606

New Jersey
PNC Bank Building
1 Garret Mountain Plaza - 6th Fl.
West Paterson, NJ 07424
(973) 754-0031
Fax: (973) 754-1331

James M. Neylon, *Paralegal*
(1934-1998)
Spencer M. McLaughlin, Esq.
(1945-2007)

February 8, 2008

Honorable Stephen C. Robinson, USDC
United States District Court
Southern District of New York
300 Quarropas Street, Room 633
White Plains, New York 10601-4150

    Re:    **United States of America v. Bernard Beebe**
            **Case No.: 707-cr-00542-SCR**

Honorable Judge Robinson:

    As per the direction of the Court when we appeared on Friday, February 1, 2008, I am writing this letter as well as enclosing an Affidavit signed by my client, Bernard Beebe. In addition, I'm enclosing for the court's convenience a copy of the transcript of the proceeding. The Court made it rather clear that it did not want an additional brief and, as such, I am attempting to comply with that.

    In the course of my appearance, when the Court asked me questions, I did my best to try to respond to the Court's inquiry. Repeatedly, the Court asked whether the fact of merely going to a police station, alone, would create a custodial setting. My answer then and now is absolutely not. That, however, is not the case at hand.

    As the Court is absolutely aware, the issue of custody is generally decided by a fact specific review applying the objective standard to the relevant facts of the case. If at the time, of our appearance you were asking if there is a case that specifically deals with the facts of the instant case, then the answer would obviously be no.

The two major cases that the U.S. Attorney discussed when we were present were *United States v. Cota*, 953 F.2d 753, and *United States v. Mitchell*, 966 F.2d 92. Other cases were also cited in the U.S. Attorney's brief.

*Cota* is not applicable to the instant matter at all, since in the *Cota* case, a woman was driving a car and taken out in handcuffs because they were looking for a fugitive who normally would have been driving the car. After determining that the fugitive was not in the car, they unhandcuffed her and released her so that she was absolutely free to go. Ultimately, she came down to the police station totally voluntarily for the purpose of getting her car released, not for a criminal investigation. While at the station, she made various admissions. This is a far cry from the present facts before the Court. Furthermore, which is most key to distinguishing *Cota*, is that when she got to the police station, <u>she was specifically told that she was free to leave</u>. Under the circumstances, custody was not found.

In *United States v. Mitchell*, 966 F.2d 92 (Second Circuit), the defendant welcomed the EPA representatives into his home and was completely cooperative and willingly divulged information. Furthermore, the Court recognized that neither Mitchell nor his co-defendant identified the EPA representative who questioned them as a criminal investigator. Similarly, in that matter, the defendant was spoken to in his home and willingly talked to them on his porch and then essentially went for a ride with him to view a plant and then was returned to his house.

Also, in that case, the Court recognized that neither Mitchell nor his co-defendant had identified the EPA representative who questioned them as a criminal investigator.

By contrast, defendant herein was questioned at the police station, by individuals who had identified themselves as law enforcement officers, and by individuals who indicated that defendant had committed a crime. Having been told by police officers, in a police station, that he had committed a crime, a reasonable person in defendant's shoes would have anticipated that he would be arrested and held in custody and that he would not be free to leave.

2

As such, certain factors including the location and the atmosphere under which the statements were made in *Mitchell,* clearly distinguish that case from the case at bar.

In addition, the U.S. Attorney cited *United States v. Guarno*, 819 F.2d 28, in which the suspect was at a motel and the Court found it undisputed that Mr. Guarno was not placed under arrest at the motel. Important to note is the Court stated, "indeed, they told Guarno that he was free to leave the motel room whenever he wished to do so." Again, it is rather obvious why this case truly is not analogous to the matter at hand.

Lastly, in another case cited by the U.S. Attorney, *United States v. Campaneria*, 891 F.2d 1014, the questioning in issue did not take place in a police station, but rather occurred in a hotel where the defendant was staying. The Court specifically found that other than directing Campaneria to accompany them in the elevator, the officers had not physically or verbally indicated to Campaneria that he was not free to leave. The consistent factor in *Mitchell*, *Guarno* and *Campaneria* was that they were either in a residence such as a motel or their own home, which is quite distinguishable from a police station. In regard to *Cota*, which took place in a police station, Ms. Cota was specifically told when she got to the police station that she was free to leave. If you apply these four cases, which is the larger gravamen of the U.S. Attorney's argument, it is most respectfully suggested that they do not govern the case at hand.

The fundamental facts before the Court which are required to be viewed through the objective prism of a reasonable man can be found by reviewing paragraph 11 of the newly submitted affidavit of Mr. Beebe.

In viewing those facts, the Court would be required to apply the admonition from *Berkemer v. McCarty*, 468 U.S. 420 in regard to "how a reasonable man in the suspect's position would have understood his situation." Furthermore, on the issue of custody, the Court would have to determine if a reasonable man in that position as asserted in the affidavit would "have felt he or she was not at liberty to terminate the interrogation and leave." *Thomson v. Keohane*, 516 U.S. 99.

3

In making the custody determination, Courts have to look at various factors. These factors include: whether a suspect is or is not told that she is free to leave (*see Campaneria v. Reid*, 891 F.2d 1014 (2d Cir.); the location and atmosphere of the interrogation (*see Oregon v. Mathiason*, 429 U.S. 492); the language and tone used by police (*see United States v. Guarno*, 819 F.2d 28 (2d Cir.); whether the suspect is searched, frisked or patted down (*see United States v. Wilson*, 901 F.Supp 172 (S.D.N.Y. 1995); and the length of the interrogation (*see Berkemer v. McCarty*, 468 U.S. 420).

These considerations were specifically set forth and applied in *Tankleff v. Senkowski*, 135 F.3d 235, a Second Circuit decision, in which the Court ultimately found the defendant to be in custody after two hours of increasingly hostile questioning at the police station where police repeatedly questioned the suspect's credibility and confronted him with false evidence of his guilt.

In the instant matter, it is without any question that Mr. Beebe was in a room with two agents of Homeland Security, after they had executed a search warrant of his home and took various computers,. He was shown three photographs and specifically told that they came from his computer that had been previously seized and were illegal and/or contraband. This is most similar to issues that were presented in *Tankleff*, especially in light of the fact it is likely the agents actually presented images not recovered from Mr. Beebe's computer in his home. This was initially indicated by the fact that when he was released by the agents, the investigators asked for his password so that they could get on to his computer.

Furthermore, it is interesting to note that Mr. Tarlowe, in his statement found on page 29 of the transcript, appears to confirm that the photographs, if used, did not come, from Mr. Beebe's computer. The relevance of using the photographs, is that it was a trick similar to the one used in *Tankleff*. In the Tankleff decision, the court unquestionably considered the use of a "ruse" as an additional factor in determining whether a reasonable person would believe they were not free to leave.

This same tactic was used herein, where defendant was accused of having committed a crime by law enforcement officers while in a locked room in the police station, a hostile setting, and was repeatedly questioned in light of false evidence of his guilt.

What is relevant is that, at the time that the photographs were presented to defendant, defendant believed and, it is submitted, a reasonable person would have believed, that the facts were as alleged by the officers - that the photographs had been obtained from defendant's computer, that it was illegal to possess those photographs, and that possession of those photographs was a crime.

If the Court was to take what is stated in paragraph 11 of Mr. Beebe's affidavit, setting aside what he believed, which is irrelevant, and applied the objective standard to those facts, the admonition found in *United States v. Morales*, 834 F.2d 35, would apply. In *Morales*, the Court stated, "the custody requirement was met if questioning was conducted in custodial settings that have inherently coercive pressures that tend to undermine the individual's will to resist and to compel him to speak."

One issue that the Court may want to deal with is the presence or absence of an affirmative indication that the defendant was not free to leave. Most respectfully, Mr. Tarlowe raised this issue in his presentation to the Court. Citing *United States v. Mitchell,* 966 F.2d 92, he said, "the defendant is not in custody unless the authorities affirmatively conveyed a message that the defendant is not free to leave. And I think the defendant here has turned this on the head and said that the agents have to tell you that you are free to leave. They don't. They have to indicate, it doesn't need to be explicit, they need to convey the message that you are not free to leave." Tr. p. 14.

Specifically, in *United States v. Campaneria,* 891 F.2d 1014 (2d Cir.) the Court stated the officers had not physically or verbally indicated to Campaneria that he was not free to leave. However, the facts in *Campaneria* clearly are not presented herein. As the foregoing cases clearly demonstrate, where a defendant has not been told whether or not he is free to leave, the

courts must assess the overall environment under which questioning is undertaken. Although the agents in the instant matter admittedly did not verbally tell Mr. Beebe that he could not leave, there is no question that they physically indicated that he was not free to leave. In fact, two agents questioned Mr. Beebe in a locked room at Homeland Security Headquarters, where they instructed him where to sit while they were inside the room and where they presented him with photographic evidence purportedly demonstrating that he was guilty of a crime.

In conclusion, most respectfully to the Court, based upon the facts as presented as set forth in Mr. Beebe's affidavit, an objective viewing would suggest that a reasonable man, under the circumstances which Mr. Beebe found himself in, would believe they were in custody.

Respectfully yours,

Gary Greenwald

GG/aak
cc:   A.U.S.A. Richard Tarlowe
      (Via Fax: (914) 993-1980)