```
                              821ibeec1
                                                                      1
     821ibeec ag              CONFERENCE
1    UNITED STATES DISTRICT COURT
1    SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x
2
3    UNITED STATES OF AMERICA,
3
4             v.                              07 Cr. 542 SCR
4
5    BERNARD BEEBE,
5
6                  Defendant.
6
7    ------------------------------x
7
8                                          February 1, 2008
8                                          11:15 a.m.
9                                          White Plains, N.Y.
9
10   Before:
10
11             HON. STEPHEN C. ROBINSON,
11
12                                         District Judge
12
13                   APPEARANCES
13
14   MICHAEL J. GARCIA
14        United States Attorney for the
15        Southern District of New York
15   RICHARD TARLOWE
16        Assistant United States Attorney
16
17   GARY GREENWALD
17        Attorney for Defendant
18
18
19
19                   CONFERENCE
20
21
22
23
24
25
              SOUTHERN DISTRICT REPORTERS, P.C.
                      (212) 805-0300
                                                                      2
     821ibeec ag              CONFERENCE
1            THE COURTROOM DEPUTY:  United States v. Bernard Beebe.
2            MR. TARLOWE:  Richard Tarlowe for the United States.
3            MR. GREENWALD:  Gary Greenwald for Mr. Beebe.
4            THE COURT:  Good morning.  This is a conference in
5    this criminal matter where there is an outstanding request, I
6    guess I should call it, from the defendant for the Court to
7    schedule a hearing regarding their motion to suppress evidence
8    found pursuant to a search, and also to suppress statements
9    made by the defendant when he visited the ICE offices in
10   Manhattan.
11           Let me just turn to you for a minute about that,
12   Mr. Greenwald, because I had a couple of questions.  First of
13   all, I have read and reviewed the notice of motion which
                              Page 1
```

821ibeec1

14  attached your affirmation, Mr. Beebe's affidavit, your
15  memorandum of law and other attachments. Let me ask you this
16  question. Is there any other statement by Mr. Beebe on this
17  issue beyond the affidavit I have here?
18      MR. GREENWALD: To my knowledge, sir, based upon the
19  information, sir, that was given to me by the United States
20  Attorney, the answer would be no.
21      THE COURT: I mean in support of the motion, is there
22  another affidavit that lays out facts from Mr. Beebe's
23  perspective?
24      MR. GREENWALD: No. Just the affidavit that you have.
25      THE COURT: I wanted to mention a couple of my

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

3

821ibeec ag            CONFERENCE
1   concerns before I issue my ruling in this matter, and that is
2   whether or not there are sufficient facts alleged here that
3   could even require a hearing on these issues. The standard for
4   the court in reviewing such a motion is an objective standard,
5   that is, whether a reasonable person would have believed, with
6   respect to his statements -- I'm starting there, I'm sorry --
7   whether a reasonable person would have believed that he was
8   free to leave. Right, the issue was whether he was in custody
9   when he made the statement, because if he was in custody he
10  would have had to have been given his Miranda statements prior
11  to the use of any statement that he subsequently makes. And
12  what I read in his affidavit is Mr. Beebe indicating that he
13  felt as if he was going to be arrested, he says.
14      Let me read paragraph 12, because it's somewhat
15  conflicting and internally inconsistent. Paragraph 12 reads.
16  "I thought I was being arrested during the investigation. It
17  never crossed my mind that I could say no, because if I didn't
18  cooperate, I felt I was going to be arrested." Which sort of
19  has two issues for me. One is that one of the internal
20  inconsistency. But second of all, whether or not that
21  statement is enough, giving his subjective feelings, his
22  beliefs about what was happening to him. But given that the
23  standard is an objective one, the question is whether a
24  reasonable person would believe based on these facts that they
25  were under arrest.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

4

821ibeec ag            CONFERENCE
1       First of all, answer my first question. Do you think
2   I can read that paragraph to say that he even thought he was
3   under arrest?
4       MR. GREENWALD: Absolutely. Absolutely, your Honor.
5   You have a person who is called down, he's told to come there,
6   without me restating what's in the affidavit because I know
7   you've read it a multitude of times. He's there. There are
8   federal officials there asking him questions. Under his belief
9   he did not think he was free to leave. He thought he was being
10  arrested and he believed that if he didn't cooperate, that was
11  the only possibility. Even if he wasn't arrested he believed
12  he could be arrested and be freed. But by being cooperative
13  with those folks, that potentially if they arrested him, as he
14  thought they might because, they were saying certain things to
15  him which indicated -- it can't be in a vacuum, they're telling
16  him they're not talking, and I'm not trying to be facetious,
17  about the upcoming Super Bowl. They're talking about alleged
18  pictures on a computer which they're suggesting is illegal.

```
                        821ibeec1
19   And under the fact pattern that they have, he's directed to
20   come down there, they have police officers sitting in a room
21   with him discussing potential criminal activity, and his
22   subjective judgment, that when you apply an objective standard,
23   it's his judgment, but you take the objective standard under
24   the circumstances, man is in a room, the police are talking to
25   him about illegal things on a computer, they're asking
                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
```

                                                                      5

```
     821ibeec ag              CONFERENCE
 1   questions, and he believes based upon what they're telling him,
 2   they're not saying excuse me can you tell me what you think in
 3   a generic genial type of conversation. It was clear
 4   questioning of him. And under those circumstances objectively,
 5   I think one could think, if you say, well, you have pictures of
 6   young children on the computer or whatever the questions were,
 7   that one could argue that one reasonably objectively would
 8   think that he or she was in the process of being arrested. And
 9   in his judgment if he did not cooperate he had no shot of
10   leaving there, even if, quote, he was good to them and if they
11   chose to arrest him they might let him leave. Under those
12   standard, I think a reasonable person applying it, I think the
13   answer is yes.
14            THE COURT: Under that view, wouldn't anyone who was
15   ever questioned in a police department in any federal agency's
16   office, every one of those people in your view, it would be
17   reasonable for them to believe they were under arrest. Nothing
18   more happened here. He walked in. They don't bring him in.
19   He walks in. They ask him to come in. He could have not. And
20   then maybe he would have been arrested. But that's not what
21   happened here. Under that scenario, everyone who ever walks
22   into a police station and is asked questions would be -- in
23   your view, it would be reasonable for them to believe that they
24   were under arrest.
25            MR. GREENWALD: I most respectfully disagree with you.
                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
```

                                                                      6

```
     821ibeec ag              CONFERENCE
 1   I think it's apples to oranges here. If someone dialed my
 2   phone and says Mr. Greenwald, I'd like to talk to you, would
 3   you come down to us, I'm the FBI. I want to talk to you. I
 4   don't have to go. I go down there, and I talk to him. And I
 5   walk through the door, I have a cup of coffee, I sit down
 6   there. Would I argue to Judge Robinson that I think I was in
 7   custody?
 8            THE COURT: What's different here?
 9            MR. GREENWALD: Huge difference. The police had been
10   in their house. The FBI had come in, the home security
11   people -- huge difference -- had come into his house, taken
12   computers out of his house, scared his wife incredibly. Wife
13   calls him up, wife calls. He then calls security. The
14   operative fact that's missing from generically every time you
15   come down would you then be in custody is the fact that a
16   seizure had taken place. There had been a court-ordered
17   seizure involving his house. If you ask me a question, if
18   someone searched my house or searched an individual's house and
19   then was invited down to the police station, and they made
20   statements, and that which they had seized is the essence of a
21   crime and under those circumstances, yes, I would think, yes,
22   under those circumstances a person could reasonably believe
23   themselves to be in custody. Not just the general --
                                Page 3
```

```
                              821ibeec1
24              THE COURT:  Not could a person.  Whether a reasonable
25    person would believe.
                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
```
                                                                     7
```
      821ibeec ag              CONFERENCE
 1              MR. GREENWALD:  Judge, if you're telling -- in my
 2    opinion, you're asking my opinion, it's objective.  Obviously,
 3    I could clearly be wrong.
 4              THE COURT:  That's not objective.  He's paying you to
 5    represent him.  It's not objective at all.
 6              MR. GREENWALD:  I was being humorous.  If you have a
 7    person who has a search warrant issued by a federal
 8    jurisdiction to come down and they seize things out of the
 9    house, and when you walk through the door the agent starts
10    saying because of what's on this computer you're facing
11    substantial jail time and things along those lines, that's not
12    the same conversation as every time someone is invited down to
13    a police agency would a person be in custody.  There's a
14    significant operative fact.  And --
15              THE COURT:  So you're saying that the key fact for you
16    is that a search warrant had been executed?
17              MR. GREENWALD:  Absolutely.  Absolutely.
18              THE COURT:  And that means -- wait a minute -- and
19    that means that it was reasonable for him to believe that he
20    was under arrest?
21              MR. GREENWALD:  Judge, under the circumstances --
22              THE COURT:  I mean, look, they were at his house, they
23    didn't arrest him.
24              MR. GREENWALD:  He wasn't there.
25              THE COURT:  But they didn't arrest him.  They didn't
                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
```
                                                                     8
```
      821ibeec ag              CONFERENCE
 1    grab him wherever he was.
 2              MR. GREENWALD:  That's true.
 3              THE COURT:  They grabbed the evidence that they
 4    thought was appropriate.  But he is not then arrested.  That
 5    is, no one shows up wherever he is, at his job, wherever he is,
 6    no one shows up and says you must come with us.  So the first
 7    thing that happens that is unusual in an arrest, the police
 8    say, would you mind coming down.  That typically doesn't happen
 9    when you're placed under arrest -- no?
10              MR. GREENWALD:  Your Honor, I've had, without trying
11    to be nonobjective, I've had a multitude, especially
12    for-example in sex crimes --
13              THE COURT:  Yes.  That's when you are represented by
14    an attorney and they know who your attorney is.
15              MR. GREENWALD:  No.  I'm just saying from my
16    experience, a multitude of times in my career, defendants have
17    been, quote, invited down to the police station and absolutely
18    arrested after they arrived there.  Many, many times.
19              THE COURT:  What happens when they arrived there that
20    makes them arrested?
21              MR. GREENWALD:  They come in.  There's a conversation.
22    Ultimately a confession or some other aspect takes place.  And
23    based upon something that had triggered their request to come
24    down, they're then formerly placed under arrest.
25              THE COURT:  But there's a difference, right.  And the
                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
```
                                                                     9

821ibeec1
821ibeec ag                    CONFERENCE

difference is -- right, any conversation with a law enforcement officer, no matter how it's done, where it's done, could result in an arrest.

MR. GREENWALD: Absolutely.

THE COURT: I could be walking down the street, a police officer could say do you know what time it is and I could say I just murdered that guy over there. I am now placed under arrest. It doesn't mean that I was in a custodial situation prior to that. Yes, if someone goes into a police precinct and confesses to to a crime, I could see how that situation could turn custodial very quickly. The question is is it custodial, was this custodial? Could things have happened in it that turns it custodial? Sure. He admits to a crime. He could be arrested, he might not be but he could be. The fact that you could turn it into a custodial situation doesn't mean that it is a custodial situation.

MR. GREENWALD: If I may, might I give an example to the Court? Might I?

THE COURT: Go ahead.

MR. GREENWALD: Let's say, for argument sake, there was a locker room with a whole bunch of folks working out of it and the police agency comes in and they search the locker room and they find cocaine in it. And different people who had access to that locker room are -- and in this case Mr. X is called. I know you were in the locker room, we want to speak

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

10

821ibeec ag                    CONFERENCE

to you about it. We found cocaine in it. He comes down there. The police say statements that aren't true. We've been told that this is your cocaine, etc., etc. Two police officers down there. What they're saying is inaccurate. Ultimately he makes any statement, even an admission, let's say not a confession.

Is it objective under those circumstances to believe -- and they let him go afterwards, by the way, after he makes the admission he was the only one in that room the night before or something that would be in the nature of an admission. Would it be reasonable objectively to suggest that that person was in custody, where they're discussing the fact, and he believed that they had told him that he was involved with those drugs --

THE COURT: It doesn't matter what he believed.

MR. GREENWALD: It's important. What is important -- absolutely, I don't disagree. What is important, objectively, if the people are saying to you this is your cocaine, objectively applying the facts of the circumstances, the drugs, what was said to him, would a reasonable person under that standard believe that he was in custody. I believe the answer would be yes. It would be no different here.

THE COURT: What do you think being in custody means to most people?

MR. GREENWALD: I'm sorry, your Honor.

THE COURT: What do you think being in custody means

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

11

821ibeec ag                    CONFERENCE

to most people?

MR. GREENWALD: Most people would believe, and even though --

THE COURT: That they're not free to leave, right?

Page 5

821ibeec1

    MR. GREENWALD: That is the standard. Nor are police required to tell anybody that.
    THE COURT: But there's no dispute in this case that Mr. Beebe was not told he could not leave, correct?
    MR. GREENWALD: Absolutely. No dispute with that.
    THE COURT: There is no dispute in this case but that he voluntarily went to the offices. No dispute about that.
    MR. GREENWALD: That statement is correct. The only amendment about that is after the government had searched his house. So I want that included. There's no dispute about that.
    THE COURT: And there's also no dispute about during the course of his time there he never asked to leave and was prevented from doing so.
    MR. GREENWALD: Your Honor, I don't think -- the answer to that question, if I'm to respond, that statement is absolutely correct. But I don't think that in an objective standard that is an applicable factor for the Court to consider. Because most people who have never been involved in the criminal justice system are intimidated under the circumstances.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

12

821ibeec ag         CONFERENCE

    THE COURT: In an objective case, I can consider any facts that are accurate. What happened and what didn't happen. They're both relevant to whether objectively a reasonable person would have believed they're under arrest. If certain facts happened it would make it more likely that an objective person would believe that, and if certain facts didn't happen, it would make it less likely that a reasonable person would believe they were under arrest.
    MR. GREENWALD: One objective factor, if the Court views that as an objective factor for its consideration, people normally don't ask may I leave.
    THE COURT: No. I'm asking about what happened here.
    MR. GREENWALD: He never asked. That's true.
    THE COURT: Okay. So it is your position that the salient fact that makes this, would make a reasonable person believe that this was a custodial situation, was that a search warrant had previously been executed at their house.
    MR. GREENWALD: Not only do I say that, your Honor, but as an example under what circumstances in this case he wouldn't have been in custody, potentially, is the government had learned purportedly through an investigation involving the Internet and allegedly that led to the search warrant for this. Hypothetically, they never executed the search warrant but believed his name was on the list, and said: Mr. Beebe, can you come down, would you mind coming down to talk to us?

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

13

821ibeec ag         CONFERENCE
There's been no search warrant up to this point of time. And said: Excuse me, we're doing an investigation. And by the way, we believe that you might be involved with child pornography. And just a general conversation, without the search warrant. Under those circumstances, conceding the other facts that you said, I don't believe an objective standard would be that he was in custody.
    When you trigger that they have seized it and tell him that there's illegal things on his own computer, and you have

821ibeec1

10  two police officers sitting in an office, even though he went
11  in voluntarily, I don't think it is a major push to suggest
12  that objectively someone would think he would be in custody in
13  light of the seizure plus what the government said to them.
14          THE COURT: Let's talk about that then. What he says
15  the government said to him was, he claims that he asked was he
16  the subject of an investigation. And he was told, according to
17  him, the answer to that question was, it's hard to tell since
18  our investigation is based on the Internet. So now you have a
19  person who has voluntarily shown up. When asked if he is the
20  subject of an investigation which theoretically would be the
21  precursor to an arrest, you have an investigation then an
22  arrest typically, when he's being asked, whether the antecedent
23  facts are true, that is you're investigating me, he's told
24  essentially -- well, he certainly isn't told yes. And he's
25  told, and I don't want to characterize it, as he says it in his

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

14

821ibeec ag              CONFERENCE
1   affidavit, "It is hard to tell since our investigation is based
2   on the Internet."
3           So he at that time learns that he is not, at least for
4   sure, even being investigated. Why would it be reasonable for
5   a person to then assume they're not investigating me, but I'm
6   under arrest?
7           MR. GREENWALD: To answer your question, your Honor, I
8   don't recall if I have the complete papers here because I
9   didn't realize we were going to be arguing it, so I believe --
10          THE COURT: That's not fair. But I did --
11          MR. GREENWALD: Obviously it's my papers and I have an
12  obligation to respond. But my recollection, your Honor, and I
13  apologize to you for this, is that we provided a copy of the
14  notes or the statement of the individual who interviewed our
15  client. And among other things he said, we thought this was a
16  sufficient affidavit for the Court, and obviously it could be
17  wrong, but they indicated in that conversation that I believe,
18  again I don't recall, we can supply it to the Court, in the
19  course of that conversation they told him, they told him
20  specifically as I recall that there was purported child
21  pornography on his computer. Told him that. So it's not in
22  here, but I think we attached a copy of the notes of the
23  investigator, what he said he said to my client.
24          THE COURT: Sure. But your client was -- forget what
25  Mr. Beebe believed. This reasonable person is told, is called

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

15

821ibeec ag              CONFERENCE
1   up, and they say can you come down to the police station, they
2   say, to the police. Am I being investigated. The police
3   essentially say not yet. We can't tell. Under that scenario,
4   it is your contention that that person is reasonable in
5   believing that they're under arrest?
6           MR. GREENWALD: The answer to that question in regard
7   to what I am saying to you -- I believe we also, you can cull
8   the whole record of our papers, I believe we attached the notes
9   of the officer who did the interview, I believe we did -- and
10  you will see that they told him, they specifically -- in
11  addition to what's in this affidavit. We didn't put every fact
12  of the interview between the two of them in regard to it. And
13  they, I believe, they also told him they had seen it on his
14  computer if I remember correctly. Can I just have one second

Page 7

```
                              821ibeec1
15   with my client, your Honor.
16            THE COURT:  Sure.
17            (Counsel confers with his client).
18            MR. GREENWALD:  Your Honor, just as a point of
19   reference, he indicates to me, and again I don't have the
20   notes, that they showed it to him when he got there.
21            THE COURT:  Right.  So let's assume that's true.  They
22   executed a search warrant, and they found material on his
23   computer that is troubling.  And he says, am I being
24   investigated, and they say, no, not yet.  This is an Internet
25   matter.  We don't know yet.  And you think a reasonable person
                     SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
```

16

```
     821ibeec ag                 CONFERENCE
1    in that situation would believe that they are under arrest?
2             MR. GREENWALD:  Judge, it may be hard, and I don't
3    want to seem inappropriately humorous again or sarcastic, but
4    just because a police officer says, you know, we're not sure.
5    If a person has a house, search warrant is executed, police
6    officer says:  Hello, you got some inappropriate pictures on
7    the computer.  Person says:  By the way, am I being arrested
8    right now?  Well, it might be the Internet.  A person could
9    believe objectively --
10            THE COURT:  Let's be clear about how this happened.
11   He is called and he voluntarily walks into the police
12   department.  It doesn't they've got him on the spot cornered.
13            MR. GREENWALD:  Absolutely correct.
14            THE COURT:  Let me finish.  He voluntarily walks in
15   and doesn't say to them am I under arrest, because if he said
16   that the question would have been much easier.  What he says
17   is is the thing that is the precursor to me being arrest
18   happening?  Am I being investigated?  And they say no to that.
19   The precursor to being arrested is typically that some level of
20   investigation has been done.  When he's asking has that
21   happened, they say no.  Why then would he believe he's under
22   arrest?
23            MR. GREENWALD:  Judge, to suggest -- I have a
24   gentleman who is a manager of a bus company.  He's never taken
25   any courses of law.  His wife calls him hysterically upset that
                     SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
```

17

```
     821ibeec ag                 CONFERENCE
1    members of the federal government --
2             THE COURT:  The question is not what Mr. Beebe
3    believed.  That's doesn't matter.
4             MR. GREENWALD:  These are the objective facts that you
5    would consider under the fact pattern.
6             THE COURT:  I'm supposed to consider what a reasonable
7    person would believe, not what he would believe if he was
8    reasonable, what a reasonable person would believe.
9             MR. GREENWALD:  A search warrant has been executed on
10   his house.  He has no clue why.  Picks up a telephone.  They
11   invite him to come down.  He comes down.  No question about it.
12   There's no warrant for his arrest, no one told him he had to
13   come down.  All those are absolutely accurate.  He goes down
14   there.  He walks in there.  Sits down in a room with other
15   police officers.  At no time do they say, even though they're
16   not obligated to say, by the way, we'd like to talk to you,
17   when we're done you can leave.  No one says that.  He sits down
18   there and has a conversation saying inappropriate pictures and
19   on top of it, we just took it out of your house.  Governmental
```

```
                              821ibeec1
20      agency had to go to some court, trigger the justice system on
21      some level.  And they're talking to him.  It's almost
22      irrelevant what the police officer says.
23              THE COURT:  It's irrelevant what they say?  You don't
24      mean that.
25              MR. GREENWALD:  Judge --
                     SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
                                                                      18
         821ibeec ag               CONFERENCE
1               THE COURT:  See, if they had said to him, you know
2       what, you can't leave, you wouldn't say that.  I don't know
3       what you meant, I'm listening to what you say.  And you take
4       positions that are ridiculous and that concerns me.  It can't
5       be irrelevant what they say to him.  Part of what a reasonable
6       person believes is happening is based on what the police are
7       saying to them.  You even cite that in the affidavit where he
8       quotes himself asking them questioning and he cites their
9       answer in support of why he believes it.
10              MR. GREENWALD:  I'll tell you what I meant, because I
11      didn't get the next sentence out, your Honor.  Obviously,
12      anything the police officer says is obviously relevant.  Any
13      other position is an absurd position.
14              THE COURT:  Don't say then what the next sentence is
15      going to be.  Anything the police say doesn't matter, but you
16      know what?  Of course, that's an absurd position to say what
17      the police say doesn't matter.
18              MR. GREENWALD:  We'll get past the term irrelevant.
19      If a police officer says something in the course of
20      interrogation which appears to be innocuous, appears to be
21      innocuous, but objectively it is part of the standard to
22      possibly get an admission or a confession, the fact that it's
23      innocuous but it's part of a circumstance in which to get a
24      statement or a confession which happens --
25              THE COURT:  Show me a case that says that,
                     SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
                                                                      19
         821ibeec ag               CONFERENCE
1       Mr. Greenwald.  Shows me a case says that.
2               MR. GREENWALD:  It's not a case.  It's a fact pattern.
3       That's how it's done.  That's how it's done on a regular basis.
4               THE COURT:  Your position is what I started out with.
5       Anybody who voluntarily walks into the police department and is
6       questioned is under custody, and it's reasonable for them to
7       believe they're under custody.
8               MR. GREENWALD:  That's not what I said.  I have not
9       said -- I disagreed with that statement three times.
10              THE COURT:  You're saying --
11              MR. GREENWALD:  The Court wishes to keep saying that.
12      There's nothing for me to say.
13              THE COURT:  Then sit down if there's nothing for you
14      to say.
15              MR. GREENWALD:  The issue that I said is I agree with
16      you that if any time a person walks through the door and has a
17      conversation with the police does that mean they're
18      automatically in custody?  Of course not.  I never said, will
19      never said that and don't believe that.  Do I believe where a
20      person has a search warrant in his house --
21              THE COURT:  If you don't cut me off, I was about to
22      add that.  What I was saying is you believe that any time a
23      person walks into a police department voluntarily, they are
24      under custody, if prior to that a search warrant has been
                                Page 9
```

```
                            821ibeec1
     25   issued and executed in their house. You believe that, right?
                     SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
```
                                                                    20
```
          821ibeec ag              CONFERENCE
      1            MR. GREENWALD: No, sir. What I said is you add that
      2   to the fact of what the police said or did to him, such as --
      3   you add one more act.
      4            THE COURT: What did the police say and do to him?
      5            MR. GREENWALD: The police speak to him and indicate
      6   to him that there were inappropriate pictures, which you've
      7   discussed before. If you add that fact pattern into what you
      8   just said, yes, under those circumstances I would believe all
      9   the time that the person was in custody. To answer your
     10   question.
     11            THE COURT: You would believe that?
     12            MR. GREENWALD: If you add that fact to it? If you
     13   add the fact that -- excuse me, sir --
     14            THE COURT: Whoa. You as a lawyer would believe that?
     15            MR. GREENWALD: That there are pictures that we
     16   believe are illegal or pornographic on your computer that we
     17   just seized from your house, what I believe, and the police
     18   officers are speaking to the person, yes, I would believe that
     19   he was under arrest.
     20            THE COURT: Wow. I suggest you do a lot of research,
     21   Mr. Greenwald. Because that's actually not what the law would
     22   say. The question is not also what you believe. I don't
     23   really care. The question is what a reasonable person would
     24   believe, which I frankly up until now was assuming was a lower
     25   standard than what you as a lawyer would believe.
                     SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
```
                                                                    21
```
          821ibeec ag              CONFERENCE
      1            MR. GREENWALD: Okay.
      2            THE COURT: Because a lawyer would have a knowledge of
      3   the law, would view that fact, circumstance differently. I
      4   would hope. But if you want to place yourself -- I'm saying
      5   what a reasonable person, he's not a lawyer, would believe.
      6   That's the question that I'm here to answer, not what you would
      7   believe. I frankly am surprised to hear what you believe, but
      8   God bless.
      9            The question is based on the facts as we, as I have
     10   them alleged before me. And so your position is that he is
     11   under arrest when?
     12            MR. GREENWALD: Sir, he is under arrest.
     13            THE COURT: When does the arrest start?
     14            MR. GREENWALD: I'm about to answer that question,
     15   sir. He is under arrest when he sits down there, police
     16   officer discussed that there's an investigation ongoing and
     17   then tell him specifically on the computer that they have
     18   seized that they have found items on his computer which they
     19   perceive as being illegal or criminal or something along those
     20   lines, and he's sitting right across in an office of two police
     21   officers.
     22            THE COURT: And when in this circumstance with
     23   Mr. Beebe did he stop being under arrest? Because he clearly
     24   at some point under your scenario was under arrest but he just
     25   as clearly stopped being under arrest at some point. They
                     SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
```
                                                                    22
```
          821ibeec ag              CONFERENCE
                              Page 10
```

821ibeec1

don't book him, they don't fingerprint him, they don't detain him, they don't give him bail. And he walks out. When does he stop being under arrest?

MR. GREENWALD: When they tell him he can leave.

THE COURT: So it is your view that what happened here was they started the arrest at the questioning and stopped the arrest at the end of the questioning?

MR. GREENWALD: I've had many cases --

THE COURT: I didn't ask you about your case. I'm tired of hearing about the history of your practice. We're talking about this case. I'm asking you what you think happened here.

MR. GREENWALD: The moment Mr. Beebe believed he could walk out that door, he was not in custody and he was not under arrest.

THE COURT: Let's be more specific, since we're lawyers talking.

MR. GREENWALD: Yes, sir.

THE COURT: We've already gone through, I thought already we agreed it doesn't matter what he believed.

MR. GREENWALD: Mm-hmm.

THE COURT: No law. We lawyers read the law books, the cases. The law does not talk about what he believes he's being having any factor in whether or not he's being arrested. You concede that, right?

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

23

821ibeec ag                CONFERENCE

MR. GREENWALD: Of course I do, your Honor.

THE COURT: He doesn't stop being arrested when he believes anything. The question is when does he stop being arrested. Because what he believes, I didn't ask you when he thinks he starts to believe he's not arrested.

MR. GREENWALD: I am sorry --

THE COURT: Let me finish. As your lawyer in this matter, you ask when did the arrest start and when did it stop. And it can't be based on what he thought because we know from reading cases and law that it is not a subjective test.

Go ahead.

MR. GREENWALD: When he was told he could leave.

THE COURT: When he was told he could leave.

MR. GREENWALD: Correct.

THE COURT: So it is your view that he was under arrest, he was actually under arrest in this case?

MR. GREENWALD: He was in custody, your Honor.

THE COURT: Okay.

MR. GREENWALD: He was in custody.

THE COURT: Let must just understand, because I try to be careful in what I'm thinking about these things. Your position is that it is even one step further than a reasonable person would believe that they were under arrest. Your position is he was actually in custody. That's your position.

MR. GREENWALD: At the time an objective view of the

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

24

821ibeec ag                CONFERENCE

evidence is that he was in custody at that time. Yes. That is my position, your Honor.

THE COURT: Let me back up. Because that's not what you said earlier. Is it your position that a reasonable person would have believed it, or as you earlier stated, he was

821ibeec1

```
 6    actually under arrest and in custody?  Those are two, let me be
 7    clear, those are two different statements.  One statement is
 8    whether a reasonable person would believe it.  The other
 9    question is whether in actuality that was the circumstance.
10    You have been saying to me up until your very last statement
11    that in actuality he was in custody.  Is that your position or
12    is that not your position?  Because you may say no, upon
13    thinking about it I'm not saying he was actually in custody,
14    I'm only saying that a reasonable person would have believed
15    they were in custody.  What's your position so I can understand
16    it?
17              MR. GREENWALD:  Sir, under the objective standard, a
18    reasonable person would believe under the circumstances and the
19    facts that we've gone over several times that he was in
20    custody.
21              THE COURT:  Okay.  Let me ask you the second question,
22    so I can be clear about what your position on that.  Is it your
23    view that he was actually in custody and under arrest?  Ever,
24    during this scenario, is it your belief, based on the facts of
25    this case as we have them, that he was ever actually in custody
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

25

821ibeec ag                    CONFERENCE

```
 1    and under arrest?
 2              MR. GREENWALD:  I would only answer the question,
 3    hopefully without causing you getting upset with me, my view of
 4    whether he was or he wasn't is not relevant to the objective
 5    standard that the Court would have to apply.  So if I say yes
 6    or no, potentially, I don't want to use the wrong word, but
 7    that may not be part of the Court's consideration.
 8    Objectively, I believe the facts indicate that he was in
 9    custody.  That would be my answer.
10              THE COURT:  Here's why I asked you.  When I ask a
11    lawyer questions, one of the things I'm trying to assess is to
12    what extent they are processing the facts that we have with the
13    case law that tells us how to process that.  So I try to test
14    to see whether they do that.  So I've had a concern during the
15    course of our discussion that some of the propositions you
16    state are actually not the law.  And so I want to understand
17    what distinctions you're making between them so I can then
18    judge your earlier statements to me.  You can choose to answer
19    or not to answer.
20              MR. GREENWALD:  I would always want to answer your
21    questions.
22              THE COURT:  Here's my question then.
23              MR. GREENWALD:  Yes.
24              THE COURT:  My question is:  Is it your position on
25    your view of these facts that he was actually either in custody
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

26

821ibeec ag                    CONFERENCE

```
 1    or under arrest at any time during these proceedings?
 2              MR. GREENWALD:  My view is he was in custody.
 3              THE COURT:  Okay.
 4              MR. GREENWALD:  Sir.
 5              THE COURT:  Okay.  Great.  Anything else you want to
 6    add to this.
 7              MR. GREENWALD:  No, I just want to respond to your
 8    questions.
 9              THE COURT:  You have, in a very helpful way.
10              MR. GREENWALD:  Do you have any other questions?
```

Page 12

```
                                 821ibeec1
11              THE COURT:  Not for you.
12              MR. GREENWALD:  Thank you, sir.
13              THE COURT:  Mr. Tarlowe, let me understand your
14    position on this.  Is it your position, first I'll start with
15    the last position, that Mr. Beebe under these facts as we
16    understand them here was actually either under arrest or in
17    custody?
18              MR. TARLOWE:  He was not in custody or under arrest at
19    any point.
20              THE COURT:  Okay.  And obviously your position is that
21    a reasonable person wouldn't have believed that they were under
22    arrest or in custody.
23              MR. TARLOWE:  Correct.  I think the law in this
24    circuit clearly supports that conclusion.
25              THE COURT:  Let me ask you about this.  Could it be
                         SOUTHERN DISTRICT REPORTERS, P.C.
                                   (212) 805-0300
```

27

```
      821ibeec ag                CONFERENCE
 1    that the inquiry about whether the person believed that they
 2    were under arrest or in custody does not begin at the moment
 3    they walk into the police precinct?
 4              MR. TARLOWE:  I would agree with that.
 5              THE COURT:  So that we should look at everything
 6    that's happened in their life with respect to the police
 7    relevant to this issue.
 8              MR. TARLOWE:  Relevant to this issue, yes.  The
 9    circumstances that led up to his arriving at the ICE office is
10    certainly relevant.
11              THE COURT:  Why wouldn't it be fair to say that the
12    search warrant having been executed and his knowledge of that
13    fact would not lead a reasonable person to believe that they
14    were in fact under arrest when they walked into that police
15    precinct?
16              MR. TARLOWE:  The law just doesn't support that
17    conclusion.  We cited cases, there's one case, Second Circuit
18    case, where a person was pulled out of her car at gunpoint and
19    handcuffed and then taken out of the handcuffs and asked to
20    accompany the police to the police station and the Second
21    Circuit said that person was not in custody.
22              I don't think the law supports that.  The issue of the
23    search wasn't raised in their papers.  I'd be very surprised to
24    learn that the Second Circuit has said where there's a search
25    warrant and someone voluntarily shows up at the police station
                         SOUTHERN DISTRICT REPORTERS, P.C.
                                   (212) 805-0300
```

28

```
      821ibeec ag                CONFERENCE
 1    and been told that we don't even know whether you're a suspect
 2    that that person is in custody.
 3              THE COURT:  Here's what I think Mr. Greenwald is
 4    saying with respect to that, we don't even know if you're a
 5    suspect person, and that is this.  Yes, they said that.  I
 6    don't think there's any dispute that they said those words,
 7    words to that effect.  But can it be said that their other
 8    words and actions override these.  That, is, we don't know
 9    you're a suspect, but we looked in your computer, we found bad
10    stuff, we have all these pictures, we've seen where you've gone
11    into chat rooms, yeah, they said you're not really being
12    investigated, but they then say things that make that statement
13    fade into the background.
14              MR. TARLOWE:  First, your Honor, he hasn't alleged
15    that.  It's not in the affidavit.
```

821ibeec1

16    THE COURT:  But he does attach the agent's 302.
17    MR. TARLOWE:  And I don't think that they ever did
18 show him pictures that were recovered because the computers
19 were  taken that day.  I don't think they had an opportunity to
20 search the computers and take stuff off the computers by the
21 time they interviewed him.  Even if you accept that the officer
22 said something like that, it doesn't change the analysis.  The
23 courts have said even where the person is the target of the
24 investigation, that doesn't mean the person is in custody.  The
25 circuit has said what's actually required is an affirmative

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

29

821ibeec ag                CONFERENCE
1 representation from the agents.  I'll read you the quote.  "A
2 person is not in custody --"
3    THE COURT:  Tell me what you're quoting from.
4    MR. TARLOWE:  United States v. Mitchell, 966 F.2d, 98.
5 "A defendant is not in custody unless the authorities
6 affirmatively convey the message that the defendant is not free
7 to leave."  And I think the defendant here has turned this on
8 its head and said the agents have to tell you that you are free
9 to leave.  They don't.  They have to indicate, it doesn't need
10 to be explicit, they need to convey the message that you are
11 not free to leave.
12    In this case if you accept as true every assertion in
13 the defendant's allegation, and let me be clear, we don't
14 accept those as true, but here's the reason why we don't need a
15 hearing to explore that.  Even if you accept those assertions
16 as true, it does not lead to the conclusion that he was in
17 custody under Second Circuit law.  There's no reason for a
18 hearing.  Even if he was able to prove those things, each and
19 every one of those factual assertions, he still wasn't in
20 custody.  I mean just to add, accepting his facts.  His wife
21 spoke to a lawyer.  Before he went down there he spoke to his
22 wife and got the advice of counsel.  He goes down there
23 voluntarily.  He asks whether he's a suspect.  According to him
24 he's told we don't know, we can't tell that yet.  He's free to
25 leave at the end.  He's never told he's not free to leave.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

30

821ibeec ag                CONFERENCE
1 There's just nothing that he's alleged that would lead to the
2 conclusion that he was in custody.
3    THE COURT:  Got it.  Mr. Greenwald, do you agree with
4 his assertion that as long as the police officers don't do
5 something to indicate that the individual is not free to leave
6 then they are not in a custodial situation?  Do you agree with
7 that proposition?
8    MR. GREENWALD:  Your Honor, to answer that very
9 specifically, if that is limited to a verbal command, you're
10 not free to leave, but if it is by other aspects, for example,
11 if you're brought into a room, the door is shut, two people are
12 sitting across from you, you have a sense, objectively, that
13 you're not walking out of there unless you cooperate, if those
14 facts are presented and if on top of it in this specific case
15 you're showed pictures, they discuss exactly what the Court
16 said a moment ago, that notwithstanding some comment, and then
17 you add exactly what you said before, which is what I was
18 trying to say earlier, you said what I was trying to say, it
19 sort of fades away to the side, I used possibly an improper
20 word, irrelevant, it fades off to the side in the light of the

```
                              821ibeec1
21      other actions and the statements that negate that which was
22      said before. That's the point that I was trying to make.
23               THE COURT: I hear you. Let me try to be very
24      specific about what you're saying. What facts then make this a
25      custodial situation? You believe -- I understand your issue
                        SOUTHERN DISTRICT REPORTERS, P.C.
                                 (212) 805-0300
```

                                                                        31
```
        821ibeec ag                 CONFERENCE
1       about the search warrant previously being issued. I'm not sure
2       that that's relevant. But that if you are brought into a room
3       and the door is closed, and there are agents or officers
4       questioning you, and they raise facts that tend to show you
5       might be involved in criminal activity, you think that converts
6       the situation to a custodial situation?
7                MR. GREENWALD: I would make it, if you allow me,
8       everything you said. But just add if they were to say
9       specifically these pictures were found on your computer and
10      this is a crime or something along those lines.
11               THE COURT: And they indicated that they have evidence
12      that you committed a crime. You think that makes the situation
13      custodial?
14               MR. GREENWALD: I think objectively for people who
15      have nothing to do with the criminal law system and they're in
16      a closed room with two police officers saying I've seized your
17      computer which I got off the search warrant which is a crime,
18      would a reasonable objective person think they were in custody?
19      I think the answer would be yes.
20               THE COURT: And you think that that comports with
21      Second Circuit law?
22               MR. GREENWALD: I believe, because there is no
23      specific Second Circuit decision -- there are decisions in
24      which they say this doesn't make it, these facts do not make
25      that. If you had a fact, fact specific that was consistent
                        SOUTHERN DISTRICT REPORTERS, P.C.
                                 (212) 805-0300
```

                                                                        32
```
        821ibeec ag                 CONFERENCE
1       with this fact pattern, then I would say yes, there is a case.
2       There isn't a case. In any given case argued before any judge
3       you find a similar case and you try to argue or analogize it to
4       your circumstances.
5                THE COURT: Give me the case most similar --
6                MR. GREENWALD: Judge.
7                THE COURT: Let me finish my question. Give me the
8       case that's most similar that's helpful to your position.
9                MR. GREENWALD: I sincerely apologize to the Court
10      because it was my understanding -- I surely would have been
11      prepared. I remember calling and saying there wasn't to be
12      oral argument. If there was, I would have been most prepared
13      for it and I apologize to the Court.
14               THE COURT: That's my fault. I apologize to you.
15               MR. GREENWALD: If the Court wants to schedule this
16      for oral argument at a different time --
17               THE COURT: I know we've already had briefing on this
18      matter. If by next Friday you can simply send to me, no
19      additional briefing, simply send to me the citation, and to
20      Mr. Tarlowe, the citation of the case or as many cases that you
21      wish in the Circuit that you think are as close to supporting
22      your statement of the facts in this case as possible, I would
23      like to see that. Because at least as far as my memory is
24      concerned, and as Mr. Tarlowe had cited to me U.S. v. Mitchell,
25      I think that there needs to be some, I'm not sure if this is
```

821ibeec1
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

33

821ibeec ag                    CONFERENCE

the appropriate word, there needs to be some clear indication on the part of the agents that he is in custody or is not free to leave. It doesn't have to be verbal. That's the clearest. If they say you're not free to leave, that's easy. Given that there isn't an allegation here that that was ever verbally said, the question then becomes what actions did they do that made it clear, would have made it clear to a reasonable person that they were not free to leave.

   I'm just telling you where I am right at this second. Clearly, I will be interested in hearing what you can supply to me or read what cases you can supply to me. But the fact that they bring him into a room and close the door and ask him questions does not convert it into a custodial situation and certainly doesn't mean he's under arrest. This is what I was trying to get at with you before when I was saying to you, tell me what facts you thought created the custodial situation. I hear you about that. I've written down what you said. So all I would like, to the extent that you can, is for you to send me case names.

   MR. GREENWALD: May I ask the Court permission for something?

   THE COURT: Yes.

   MR. GREENWALD: I would like permission in light of the inquiry of the Court to submit an additional, more complete affidavit. Because you asked me directly for the affidavit and

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

34

821ibeec ag                    CONFERENCE

because of the notice that was provided, rightfully or wrongfully, the affidavit is what it is. We would ask the Court permission to allow us, in addition, to forward to the Court a subsequent affidavit.

   THE COURT: What new information will you need to put in the affidavit that's not included in this one?

   MR. GREENWALD: I believe there might be, your Honor, in light of the inquiry on the questions that the Court asked. I would like to go over that with my client privately. All I would ask the Court permission for, if you would allow, and the United States Attorney's needs any additional time --

   THE COURT: Mr. Tarlowe, what's your view?

   MR. TARLOWE: I defer to the Court on that.

   THE COURT: Here's my only hesitance. No, I'm not going to say it that way. I will state my musings at this point.

   MR. GREENWALD: I'm sorry, I couldn't hear you.

   THE COURT: I'm musing at this point. My musing is that I would be surprised that there would be an affidavit from Mr. Beebe that now says, oh, by the way they told me I couldn't leave.

   MR. GREENWALD: That's not going to happen.

   THE COURT: Because that would be something that would be so clearly relevant and crucial it would be stunning to me that an affidavit and memorandum of law could be submitted in

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

35

821ibeec ag                    CONFERENCE

this case without that key fact.

821ibeec1

How about you have until next Friday to submit any additional affidavit, not briefing, but any cases that you want me to review. So you submit the affidavit and you could say, Judge, I think you should see United States v. Smith, here's the citation, United States v. Jones, here's the citation, United States v. Brown and United States v. Green. You serve those on the Court, courtesy copy to chambers and to Mr. Tarlowe.

If you want to take a week, Mr. Tarlowe, and again submit any additional cases that you think I ought to read that become particularly relevant in light of the new affidavit, I'm not asking for new briefing, because I think I've got the position, but we'll see if there's a need for a new affidavit or additional facts to be submitted to the Court. So next week is the 8th, for you Mr. Greenwald.

We always seem to get in arguments when you appear before me.

MR. GREENWALD: It is sad that we do that.

THE COURT: No, it's not. It's fun.

MR. GREENWALD: Because we have other attorneys who come before you regularly.

THE COURT: And they get along with me okay.

MR. GREENWALD: They all give you great reviews. And I get killed.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

36

821ibeec ag                CONFERENCE

THE COURT: They say he's a great judge and you say that?

MR. GREENWALD: I have been trying to be so good. I don't call chambers. I try not to do anything -- I try.

THE COURT: I want only say that, Mr. Greenwald, to let you know, as my chambers and close friends will tell you, if I argue with you I'm not mad at you yet. If I stop talking to you, you're in trouble.

MR. GREENWALD: The fact that you're asking direct questions, and whether my view might be a shade different, that's what makes the joy of this business that we're in.

I have a second request, if I may.

THE COURT: Oh.

MR. GREENWALD: Because you and the United States Attorney in the course of this hearing are relying on this, if I want to supply you any additional cases to suggest that any of the cases that the government has supplied to you are distinguishable, may I send them as well?

THE COURT: If you find something that says Mitchell is overruled or not applicable, sure, that would be a case you could submit to me. Just the case name. You have until the 8th.

Mr. Tarlowe, you have until the 15th. Are you giving me an evil look?

MR. TARLOWE: Not at all, your Honor.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

37

821ibeec ag                CONFERENCE

MR. GREENWALD: Please. His turn.

THE COURT: Mr. Tarlowe and I have had interesting discussions in the past.

MR. GREENWALD: Not as good as this one.

MR. TARLOWE: I didn't want to leave the misimpression that we are relying only on this one case. We cite a litany of

```
                              821ibeec1
 7    cases saying the same thing.
 8              THE COURT:  Litany.
 9              MR. TARLOWE:  I could use Mr. Greenwald's term, a
10    multitude of cases.
11              THE COURT:  Can we have a conference at the end of
12    February.  How about February 29th?
13              MR. GREENWALD:  I'll be here.  And I'm assuming by
14    virtue of what the Court has said it has no issue with any of
15    the other things that we have submitted.  There's nothing you
16    need us for other than this issue.
17              THE COURT:  No, I'm fine.  February 29th at twelve
18    noon.
19              MR. GREENWALD:  I can't wait for it, your Honor.  I'll
20    stay over.  I even came a half an hour early, today, so I could
21    have such a delightful time here today.
22              If the Court could possibly issue an order, it's most
23    important to me that the New York Giants win on Sunday.
24              THE COURT:  I'm a Jets fan.
25              MR. GREENWALD:  My brother has season tickets and as a
                      SOUTHERN DISTRICT REPORTERS, P.C.
                               (212) 805-0300
```

                                                                    38
```
      821ibeec ag                CONFERENCE
 1    favor to me he says he's going to root for the Giants.
 2              THE COURT:  Well, the only team I like less than the
 3    New York Giants is the New England Patriots.  Patriots, Miami
 4    and the Giants.
 5              MR. GREENWALD:  1-15, got to have sympathy for them.
 6              I thought possibly the word, that it might be
 7    irrelevant, based on the things that actually were done, I
 8    thought that maybe that would be seen as humorous.
 9              THE COURT:  Next time I'll be on better behavior.
10              MR. GREENWALD:  Truth of the matter is I have fun
11    coming here.
12              THE COURT:  We'll exclude time between today and
13    February 29th from Speedy Trial considerations.
14              MR. GREENWALD:  Can my client's appearance be waived?
15              THE COURT:  He can appear here if he wants to, he
16    doesn't have to.  I find that the defendant and the public's
17    interest in a speedy trial is outweighed by the need for the
18    defendant to have an additional opportunity to submit an
19    affidavit in this case, and additional case law to the Court,
20    for the government to have an opportunity to respond, and for
21    the Court to have an appropriate amount of time to rule on the
22    motion.  So the time between today and and February 29th is
23    excluded from Speedy Trial calculation in the interest of
24    justice.
25              Thank you all.
                      SOUTHERN DISTRICT REPORTERS, P.C.
                               (212) 805-0300
```

                                                                    39
```
      821ibeec ag                CONFERENCE
 1              MR. GREENWALD:  Have a good weekend, your Honor.
 2              THE COURT:  I don't know what it is, Mr. Greenberg --
 3              MR. GREENWALD:  Start with my name.  Greenwald.  God
 4    forbid, if I said your name wrong.  And nobody ever speaks
 5    badly about you, for the record.  But you didn't hear that.
 6              THE COURT:  Have a great weekend.
 7              (Proceedings adjourned)
 8
 9
10
11
```

```
                              821ibeec1
12
13
14
15
16
17
18
19
20
21
22
23
24
25
                    SOUTHERN DISTRICT REPORTERS, P.C.
                             (212) 805-0300
```